EDWIN B. COX ET AL V. FANNIE B. CAMPBELL ET AL.

No. 6941. Decided October 2, 1940.
Rehearing overruled November 27, 1940.
(143 S. W., 2d Series, 361)

*W. H. Sanford* and *Conan Cantwell,* both of Dallas, and *Black, Graves & Stayton,* of Austin, for plaintiff in error.

A deed describing land as bordering on the railroad right of way, without saying anything about reserving the said right of way from the grant, conveys title to the center of railroad right of way, as a matter of law. Roxana Pet. Co. v. Sutter, 28 Fed. (2d) 159; Texas Bithulithic Co. v. Warwick, 293 S. W. 160; Shell Petroleum Co. v. Hollow, 70 Fed. (2d) 811.

*Greenwood, Moody & Robertson,* of Austin, *A. M. Barton,* of Palestine, *Bibb & Bibb,* of Marshall, *R. S. Shapard* and *S. W. Lancaster,* both of Dallas, for defendants in error.

The description in the deed of the land involved in this suit manifested a clear and unequivocal intention on the part of the parties to said deed that the title should not be carried to the center of the railroad right of way. Maynard v. Weeks, 41 Vt., 617; Louisville & Nashville Ry. Co. v. Elliston, 108 S. W. 858; 9 C. J. 206, sec. 112.

*Gerald C. Mann,* Attorney General, *Robert E. Kepke, Durward H. Mahon, Peter Maniscalco* and *James Noel,* Assistants Attorney General, and *Henry H. Brooks,* of Austin, filed brief as amici Curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

Plaintiffs in error sued the defendants in error in trespass to try title to recover a narrow strip of land, approximately 21.6

varas wide and 1130 varas long, being a part of the north half of the Texas & Pacific Railway Company right of way in Gregg County, Texas. Plaintiffs in error failed to recover judgment in the trial court, and on appeal to the Court of Civil Appeals at Amarillo that court affirmed the judgment of the trial court. 80 S. W. (2d) 1000.

In 1876 C. B. Carter acquired a 296 acre tract of land. Carter's predecessor in title had conveyed to the Southern Pacific Railway Company a right of way 200 feet wide across this land, which is now owned by the Texas & Pacific Railway Company. After Carter's death his executrix sold T. M. Campbell a tract recited to be 118 acres on the north side of the railroad right of way, which tract, described by metes and bounds, went to the center of the railroad right of way. The executrix also sold Campbell a portion of the land on the south side of the railroad right of way, which conveyance also ran to the center line of the railroad right of way, and it was, recited to contain 68 acres. In 1898 T. M. Campbell conveyed to J. R. Castleberry the following described land:

"Beginning at a stake on the north boundary of the Texas and Pacific Railway right of way; Thence North 411 1/2 vrs. to a stake from which a black jack brs S 45' E 5 vrs; Thence East 1325 vrs.a stake from which a post oak brs S. 63 ft W 2 vrs; a sweet gum brs S. 60' E 2 1/2 vrs; Thence South 511 1/2 vrs. a stake on the north boundary line of the Texas and Pacific Railway right of way from which a pine brs N 26' W 9 vrs; Thence with said Texas and Pacific Railway right of way to the place of beginning, containing 108 acres of land, more or less."

In 1904 T. M. Campbell conveyed to G. B. Turner the 68 acre tract on the south side of the railroad, and described it as follows:

"Bounded on the east by a 50 acre tract of land owned by G. B. Turner purchased by him from N. W. Rodden; Bounded on the north by the right of way of the Texas and Pacific R. R.; And on the West by a 50 acre tract owned by the said G. B. Turner and known as the J. F. Neal tract of land; Bounded on the south by the Katie Moore Boham tract of land."

In order to give a general view of the situation, the following plat is inserted:

The land involved in this suit is the strip of land lying between the south line of the tract conveyed by Campbell to Castleberry, extending to the center of the railroad right of way. The sole issue in this case is whether the description in the deed from Campbell to Castleberry had the legal effect to transfer the title from Campbell to Castleberry to the center of the railroad right of way, subject to the rights of the Texas & Pacific Railway Company. Plaintiffs in error contend that the description in the deed carried the title to the center line of the railroad right of way, and defendants in error contend that it stopped at the north boundary line of the railroad right

of way. If title to the land passed to Castleberry to the center of the right of way, then plaintiffs in error are entitled to recover here. On the other hand, if title passed only to the north boundary line of the right of way, then defendants in error are entitled to recover here. Of course the claims asserted by all parties are subject to the right of the Railway Company. This has been agreed to by a stipulation between the parties.

■ As to whether or not a conveyance with field notes which describe property to the boundary line of a street or public highway carries title to the center of the street or public highway has long been a fruitful source of controversy. Many decisions may be found upon both sides of the question. We shall not review them here. In the early case of Mitchell v. Bass, 26 Texas 372, this Court announced the following rule:

"The established doctrine of the common law is that a conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. Such is the legal construction of the grant, unless the inference that it was so intended is rebutted by the express terms of the grant."

The rule announced in the foregoing case has been constantly followed and applied in this State. In the important case of Texas Bitulithic Co. v. Warwick, 293 S. W. 160, it was held that a deed to a city lot, fronting or abutting on a street, described by metes and bounds, carries the fee to the center of the street, unless the contrary is expressly declared. The deed involved in that suit described the property conveyed by metes and bounds, stopping at the line of the street. Judge Powell wrote the opinion in that case, and, after an exhaustive review of the authorities, held that the conveyance carried the title to the center of the street.

Later the case of Rio Bravo Oil Co. et al v. J. F. Weed et al, 121 Texas 427, 50 S. W. (2d) 1080, reached this Court. That suit involved the title to .43 of an acre of land, being a narrow strip included within the right of way of the Texas-New Orleans Railway, and being a part of a 52 acre tract which was partitioned by the owners. The railroad ran across the 52 acres. The land was divided into eight tracts. A plat was made thereof, and each tract was definitely described by field notes and the number of acres in each tract specifically named. The lines of the plat stopped at the railroad right of way, and all of the field notes of the tracts of land abutting the right of way specifically call for the boundary line of the right of way, and not

the center thereof; and both the field notes and the acreage described in said lots exclude the land in the railroad right of way.

J. M. Hebert owned an interest in the 52 acre tract of land partitioned. He received as his share of the land lots Nos. 2 and 4, which lie on one side of the railroad right of way, and lots Nos. 6 and 8, located on the opposite side of the railroad right of way, as shown by the plat made of said partition. The plat inserted in the opinion rendered in the Weed Case shows that lots 4 and 6 adjoin the railroad right of way on opposite sides. Hebert conveyed to Weed, by specific field notes calling for the line of the railroad right of way, the S. E. one-half of lot No. 6, containing 3.45 acres of land. It also appears that the land included in the railroad right of way abutting the land conveyed by Hebert to Weed was excluded in the field notes and also in the acreage expressed therein. At the time Hebert conveyed the land to Weed he owned land on both sides of the railroad right of way. The land involved in that suit, as shown from the plat set out in the opinion, was part of the right of way of the railroad company, and not included in the field notes,—just as is the case here. Perhaps no other case was ever considered more seriously and for a greater length of time by this Court than was the Weed Case. It was referred to the two sections of the Commission of Appeals, and the opinions written by each section were not acceptable. Finally it was argued to the Court and the two sections of the Commission of Appeals; and the conferences held by the Court and the two sections of the Commission, in reaching a conclusion in that case, are still fresh in the memory of those who participated therein. It was contended in the Weed Case, as it is contended here, that, by reason of the fact that the field notes in the deed specifically describing the land stopped at the line of the railroad right of way, the deed did not convey title to the center of the right of way. Judge Leddy wrote the opinion of the Court. Inserted below is the pertinent part of the plat of the land involved in the Weed Case, which shows the land owned by Hebert abutting the railroad right of way at the time he conveyed part of lot No. 6 to Weed, and its relation to the railroad right of way.

The shaded area in the railroad
right of way was the tract in controversy.

To show clearly what issues were presented to this Court in the Weed Case and what was held in that opinion we quote liberally therefrom as follows:

"Plaintiffs in error assert that ownership of the land involved should have been established in them for these reasons:

"First: Because the general rule of construction which applies to a deed to land bounded by a public highway, street, or stream, has no application in the case of a railroad right-of-way.

"Second: Because the partition deed of April 17, 1901, between Hebert and the Chaison heirs shows upon its face, as a matter of law, that the right-of-way of the Texas & New Orleans Railway Company was not partitioned, and no part of same was included in lot 6 of said partition, but that title thereto remained in Hebert and the Chaison heirs as tenants in common, subject to the right-of-way privileges in favor of the railway company.

"At the outset it may be said, if defendants in error are correct in their proposition of law, that the same legal presumption which applies to the conveyance of land abutting on a public highway, street, or stream, is applicable to a railroad right-of-way, then it necessarily follows that the partition deed between Hebert and the Chaison heirs as well as the deed from Hebert to Weed must be construed to pass the title to the center of the railroad right-of-way, as neither of said deeds contained any express reservation of the land included in the railroad right-of-way. The fact that it appears from the plat that the lines of the lots fronting on the railroad stop at the

exterior line of such right-of-way is not of itself sufficient to exclude the conveyance of the title to the center of the railroad. It was expressly so determined in the case of Texas Bitulithic Company v. Warwick, 293 S. W. 160, in which the Commission of Appeals quoted with approval the doctrine announced in Corpus Juris (9 C. J., p. 201), as follows:

" 'The presumption of an intent to convey title to the center of a street or highway is not overcome by the fact that the land is described by metes and bounds, and that the distances stated in the description of the deed do not extend to the center of the street.'

"It is therefore necessary for us to determine whether said legal presumption applying to lots abutting on highways and streams is applicable to the conveyance of land abutting upon a railroad right-of-way. In the consideration of this question it becomes important to ascertain the reasons underlying the rule established by the courts at an early date to the effect that a legal presumption exists that a person conveying land situated upon a public highway or stream intends to convey to the center line thereof, in the absence of an expression of a clear and unequivocal intention to the contrary."

Then Judge Leddy discusses the rule of presumption, announced by many courts, relating to the conveyance of land abutting upon a public highway or a non-navigable stream, and furthermore, in the course of his opinion, uses the following language:

"The use of this presumption is merely the application in a different form of the familiar rule of construction which has always been enforced by the courts, that is, to indulge the presumption that a grantor intends to convey to his grantee all of the appurtenant rights incident to the beneficial enjoyment of property which he had conveyed. In other words, when a person conveys a piece of property abutting upon a public highway or non-navigable stream it is but natural to assume, in the absence of an express reservation to the contrary, that he intends to convey the same with all of the beneficial rights enjoyed by him in its use. Such benefits and advantages are usually of compelling force in inducing the sale of the property. From time immemorial deeds of conveyance have been made to convey the title to land 'together with all the rights and appurtenances thereto in anywise belonging or appertaining.' It is uniformly held that appurtenances to premises essential to the proper enjoyment thereof will be held to pass whether the word 'appurtenaces' be used or not. Simmons v.

Winters. 21 Ore., 35, 28 A. S. R., 727; Sweetland v. Olsen, 11 Mont., 27; Crooker v. Benton, 93 Cal., 365.

" 'The word "appurtenances",' says the Supreme Court of California, in the case of Caves v. Crafts, 53 Cal., 135, 'is not necessary to the conveyance of an easement. The general rule of law is that when a party grants a thing he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. The incident goes with the principal thing. The idea and definition of an easement to real estate granted is a privilege off and beyond the local boundaries of the land or tenements conveyed.'·"

Judge Leddy discusses at length the case of Stuart v. Fox, 129 Me., 407, 152 Atl., 413, and calls particular attention why the rule should apply to conveyances of land adjoining a railroad right of way, by virtue of certain articles of the Revised Civil Statutes of Texas, and also, in the course of his opinion, said:

"The court in Stuart v. Fox, supra, justified the application of the rule in conveyances of land bounded upon highways or non-navigable streams upon reasons which we think are perfectly sound and logical. It was there held that the rule should not be applied upon mere considerations of public policy. There was before the court in that case the questions as to whether it would extend this presumption to the conveyance of land bounded by a railroad right-of-way. It refused to so extend the rule, stating that the underlying reasons for applying it to streams and highways did not exist in the case of land bounded upon a railroad right-of-way. It was assumed that the railroad's use of the right-of-way was exclusive and that therefore there were no appurtenant advantages in connection with such strip of land which the adjoining land owner was entitled to enjoy in the proper use of his premises.

"We do not agree with this latter assumption. It may be admitted that one owning land adjacent to a railroad right-of-way does not enjoy the same advantages and benefits as are incident to property bounded by a highway or stream. There are, however, certain benefits and privileges just as substantial, though differing in kind, enjoyed by a person owning land situated upon a railroad right-of-way. Under the law of this State, railroads are required, upon the application of abutting land owners, to put in private road crossings at certain specified distances along its right-of-way for the benefit of such owners. Article 6321, R. S., 1925. These private ways are of material advantage to the adjacent land owners as they furnish

means of ingress and egress to and from their premises as well as convenient outlets to public highways.

"Again, railroad companies, in building their road beds, often construct high dumps on portions of their right-of-way, while on other portions deep cuts are made. The statutes of this State require them in constructing their road bed to provide and maintain such culverts and sluices as may be necessary to protect adjacent owners in the proper drainage of their lands. Article 6328, R. S., 1925. If it be determined that these narrow strips of right-of-way do not pass with the grant when land is sold which abuts on a railroad right-of-way, upon abandonment of the easement by the railway company, the adjoining land owner will be deprived of substantial benefits and privileges, as the then owner of such narrow strip of land would not be required to maintain private roads across the same, nor would he be subject to the same burden as railway companies in maintaining culverts and sluices.

"It is apparent, therefore, the adjoining owner enjoys valuable privileges and advantages in the ownership of the narrow strip of land burdened with the railroad easement. On the other hand, such a strip is usually of little practical value to his grantor. These material advantages constitute appurtenance to the adjoining land. They furnish as sound a basis for the application of the presumption of their conveyance as exists in the cases of grants of land situated on highways and streams. An owner of property adjoining a railroad right-of-way in conveying the same to another without including the narrow strip burdened with the railroad easement is omitting to grant valuable appurtenant rights incident to the beneficial use and enjoyment of the premises, as much so as he is when he fails to convey to the center of a public highway or stream."

Judge Leddy sums up his holding in the following language:

"The question as to whether the presumption should be extended to conveyances of land bordering upon a railroad right-of-ways has been often presented to the courts of this country. The overwhelming weight of authority sustains the application of the rule to conveyances of land situated upon railroad right-of-ways."

But it is contended that the case of Couch v. Texas & Pacific Railway Co., 99 Texas 467, 90 S. W. 860, should control the decision of this case. That case was cited and considered in the Weed Case. The opinion in the Weed Case is the latest expression of this Court upon that question, and, unless overruled, should control here.

The deed from Campbell to Castleberry, in 1898, conveyed all the land owned by Campbell in that tract north of the railroad right of way. He still owned 68 acres on the south side of the right of way, which he conveyed to Turner on October 31, 1904; and at that time Turner owned the Neal tract, which, as shown on the plat, abuts the railroad right of way opposite the land sold by Campbell to Castleberry; and thereafter Campbell owned no land on either side of the right of way in that vicinity. Thus it will be seen that the heirs of T. M. Campbell are now claiming that he retained this narrow strip, and that same was not conveyed in the deeds above described. It is also claimed that this narrow strip would not be considered "appurtenance" to the adjoining land after two tracts of land above indicated have been conveyed for more than thirty years.

The rule has been definitely announced in the Warwick and Weed cases that where a deed conveys by specific field notes land abutting on a street or public highway or railroad right of way, it conveys title to the property to the center of the street, public highway, or railroad right of way; and such rule is not overcome even through the field notes describing the land stop at the side line of the street, public highway, or railroad right of way, unless a contrary intention is expressed in plain and unequivocal terms. We are unable to distinguish the rule applicable to the facts of this case from the rule announced in the Weed Case. To hold that the deed from Campbell to Castleberry did not carry title to the center of the railroad right of way would be contrary to the rule announced in the Weed Case.

A brief has been filed herein by the Attorney General as amicus curiae, calling this Court's attention to certain suits now pending in the courts of this State, involving the rights of parties in certain lands sold by the State, and calling for the right of way of the Texas & Pacific Railway Company as the boundary line of such tracts of land, and it is contended that a decision here should not determine the rights of the parties involved in those suits. The issues involved in those suits are not before us for decision, and we express no opinion on the merits of those suits.

It is shown that a producing oil well has been drilled by certain parties to this suit on the land in controversy as shown on the plat, and all parties to this suit have agreed as to the method of settlement of certain matters incident to said land and oil well when the title to the land will have been determined.

By virtue of the rule announced in the Weed Case, plaintiffs in error are entitled to recover the land in controversy, subject to the rights of the railroad company. Therefore the judgments of the trial court and of the Court of Civil Appeals will be reversed, and this cause will be remanded to the trial court with instructions to enter judgment in accordance with this opinion and the agreement made by the parties, subject to the rights of the Texas & Pacific Railway Company.

Opinion delivered October 2, 1940.

Rehearing overruled November 27, 1940.