In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00100-CV
______________________________


ANGELA GLOVER, BETTY HOFFMAN, AND 
CARMAN TUCKER, Appellants
 
V.
 
UNION PACIFIC RAILROAD COMPANY, ANADARKO HOLDING CO., 
 ANADARKO LAND CORPORATION, THE UNKNOWN 
                   STOCKHOLDERS OF GREGG OIL CO., AND THE
UNKNOWN STOCKHOLDERS OF N. P. POWELL, INC., Appellees


                                              

On Appeal from the 188th Judicial District Court
 Gregg County, Texas
Trial Court No. 2003-1773-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            Before he became governor of Texas in 1907, T. M. Campbell owned a particular parcel of
Gregg County real property which straddled a railroad right-of-way and included the minerals
beneath that right-of-way. In 1904, Mr. Campbell executed a deed conveying to G. B. Turner the
165 acres of that land lying south of the south boundary line of the railroad right-of-way, which 165-acre tract is herein called the "Nettleton Tract."


 Though the deed to Turner did not describe
Campbell's six acres lying within the railroad right-of-way and south of the track centerline—the six
acres herein called the "Campbell Tract"—central to this case is whether that deed to Turner
conveyed not only the Nettleton Tract, but also the Campbell Tract's minerals. In 1940, the Texas
Supreme Court ruled that the minerals in Campbell's railroad right-of-way, but north of the track
centerline, passed to the grantee of Campbell's acreage lying north of the right-of-way. See Cox v.
Campbell, 135 Tex. 428, 143 S.W.2d 361 (1940). Through a rather detailed history of the Campbell
and Nettleton Tracts,


 Angela Glover, Betty Hoffman, and Carman Tucker (herein called
"Claimants") ultimately succeeded to a fractional mineral interest in the Nettleton Tract, while
Defendants


 Anadarko and Union Pacific succeeded to a fractional mineral interest in the Campbell
Tract.
            Claimants appeal


 the trial court's granting the summary judgment motions and pleas to the
jurisdiction urged by Defendants. Alleging that they own the Campbell Tract mineral interests,
Claimants argue that, when T. M. Campbell did not reserve the Campbell Tract minerals in this deed
of the Nettleton Tract to Turner, the Campbell Tract minerals—under the strips and gores
doctrine—passed to Turner with the Nettleton Tract. Therefore, when Gregg Oil (Anadarko's
predecessor) and Texas & Pacific (Union Pacific's predecessor) accepted a 1932 quitclaim deed of
a fractional interest in the Campbell Tract minerals from Nettleton, they became cotenants with
Claimants or Claimants' predecessors in title. Therefore, according to Claimants, the Campbell Tract
minerals have not been adversely possessed because there has been no repudiation of the cotenancy
to allow limitations to run. Also, they argue, estoppel by deed applies, and no cotenant claimed more
than 43.75% of the mineral estate. Further, according to Claimants, any statute of limitations has
been tolled because Union Pacific, Anadarko, and their predecessors fraudulently concealed their
failure to account to their cotenants.
            In response, Union Pacific and Anadarko argue that Claimants never owned any mineral
interests in the right-of-way because T. M. Campbell implicitly reserved his interest in the right-of-way in 1904. In addition, Union Pacific and Anadarko both argue that Claimants lack standing to
sue for injuries to land and have waived error by failing to comply with the appellate briefing rules. 
They also claim title to the minerals through adverse possession. Union Pacific also argues that the
suit is barred by the four-year statute of limitations for suits for accounting.
            We affirm the judgment of the trial court, based on six holdings:
            (1) Claimants have properly brought these claims because (a) they have standing as heirs to
the property interests in question, and (b) the claims need not have been brought as a trespass to try
title suit.
            (2) By law, because T. M. Campbell did not expressly reserve rights to the minerals under
the Campbell Tract, they passed to his grantee, Claimants' predecessor.
            (3) Defendants Anadarko and Union Pacific have title to the Campbell Tract mineral interests
through adverse possession because (a) they and their predecessors in title actually possessed the
mineral estate adversely, and (b) though a cotenancy existed in the property, there was constructive
notice of repudiation of the cotenancy by long and open mineral production from the property.
            (4) Estoppel by deed does not apply.
            (5) There is no evidence of fraudulent concealment.
            (6) Limitations bars any claim for an accounting for the production taken from the property
before adverse possession title ripened.
(1)       Claimants Have Properly Brought These Claims Because (A) They Have Standing as Heirs
to the Property Interests in Question, and (B) the Claims Need Not Have Been Brought as
a Trespass to Try Title Suit
            (A)      Claimants Have Standing as Heirs to the Property Interests in Question
            Before addressing the substance of Claimants' claims, we must first determine if we have
subject-matter jurisdiction over this appeal. Anadarko and Union Pacific each filed a plea to the
jurisdiction challenging Claimants' standing to bring suit. Because Claimants inherited the property
in question and the cause of action survives the death of the decedent, Claimants have standing to
bring this suit.
            A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction over the
controversy. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). "A plea to the
jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to
whether the claims asserted have merit." Id. Whether the trial court had subject-matter jurisdiction
is a question of law subject to de novo review. Tex. Natural Res. Conservation Comm'n v. IT-Davy,
74 S.W.3d 849, 855 (Tex. 2002); Cook v. Exxon Corp., 145 S.W.3d 776, 780 (Tex.
App.—Texarkana 2004, no pet.). Accordingly, we review de novo the trial court's determination of
standing.
            Standing is a constitutional prerequisite to maintaining a suit under Texas law. Tex. Ass'n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993). Standing, as a necessary
component of a court's subject-matter jurisdiction, cannot be waived. Id. Standing requires the
claimant to demonstrate a particularized injury distinct from that suffered by the general public. 
Blue, 34 S.W.3d at 556; see Rodgers v. RAB Invs., Ltd., 816 S.W.2d 543, 546 (Tex. App.—Dallas
1991, no writ). The claimant must have an actual grievance, not one that is merely hypothetical or
generalized. Brown v. Todd, 53 S.W.3d 297, 302 (Tex. 2001).
            Only the person whose primary legal right has been breached has standing to seek redress for
an injury. Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976); Cook, 145 S.W.3d at 781. In other
words, a person has standing to sue only when he or she is personally aggrieved by an alleged wrong. 
Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996). "Without
a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate." Denman
v. Citgo Oil Co., 123 S.W.3d 728, 732 (Tex. App.—Texarkana 2003, no pet.); Brunson v. Woolsey,
63 S.W.3d 583, 587 (Tex. App.—Fort Worth 2001, no pet.).
            We review de novo the issue of standing. Tex. DOT v. City of Sunset Valley, 146 S.W.3d
637, 646 (Tex. 2004).
            Union Pacific and Anadarko argue Claimants lack standing because they did not own the
property when the cause of action accrued. Union Pacific and Anadarko cite this Court's opinions
in Cook, 145 S.W.3d at 780, and Denman, 123 S.W.3d 728, for the proposition that Claimants lack
standing. In Denman and Cook, this Court held that the plaintiffs lacked standing when any injury
to the property occurred before the plaintiffs purchased the property and their deeds contained no
assignment of any cause of action. Denman, 123 S.W.3d at 734–35. The cause of action for an
injury to property belongs to the person owning the property at the time of the injury. Cook, 145
S.W.3d at 781; Lay v. Aetna Ins. Co., 599 S.W.2d 684, 686 (Tex. App.—Austin 1980, writ ref'd
n.r.e.). Without express provision, the cause of action does not pass to a subsequent purchaser of
the property. Cook, 145 S.W.3d at 781. Without such an express provision, a subsequent purchaser
cannot recover for an injury committed before his or her purchase. Id. 
            Our decision in Denman is distinguishable from the current case. Claimants in this case are
not subsequent purchasers of the property, but rather the heirs of the deceased party. Further, this
case concerns a suit for damages based on an alleged failure to account rather than for damages to
real property. Therefore, the issue is whether the cause of action survived the death of the originally
injured party. 
            To determine whether a cause of action survives, we must first determine whether the
survivability of the cause is controlled by common law principles or whether a statute provides for
survival. Neither party argues that a statute controls the survivability, and our own research has
yielded none. When a cause of action is not covered by a survival statute, the common law will
control. First Nat'l Bank of Kerrville v. Hackworth, 673 S.W.2d 218, 220 (Tex. App.—San Antonio
1984, no writ). 
            When determining whether a cause of action survives at common law, courts should examine
the nature or substance of the cause of action rather than the form in which it is asserted. Dowlin
v. Boyd, 291 S.W. 1095, 1098 (Tex. Comm'n App. 1927, judgm't adopted); State v. Stone, 271
S.W.2d 741, 749 (Tex. Civ. App.—Beaumont 1954, no writ). Under the common law, a suit for
injury to personal or real property will survive the death of the decedent and pass to the heirs of the
decedent. See Dowlin, 291 S.W. at 1098; Hackworth, 673 S.W.2d at 220; Pace v. McEwen, 574
S.W.2d 792, 800 (Tex. Civ. App.—El Paso 1978, writ ref'd n.r.e.).
The true line of demarcation at common law separating those causes of action which
survive, from those which do not, is that in the first, the wrong complained of affects
primarily and principally property and property rights, and the injuries to the person
are merely incidental, while in the latter, the injury complained of is to the person,
and the property and rights of property affected are merely incidental. In the former
case the cause of action survives, while in the latter it abates.

Dowlin, 291 S.W. at 1098 (fraud survives death of injured party); see Hackworth, 673 S.W.2d at
220; Pace, 574 S.W.2d at 800. 
            The cause of action at issue is a suit for damages due to Union Pacific's failure to account to
Claimants and their predecessors for their mineral interests in the Campbell tract. This cause of
action clearly is concerned with injuries to property rights and, under the common law, survives the
death of the injured party. Also, Claimants, as heirs, would ostensibly have their own, nonderivative
claim for an accounting.


 Thus, Claimants had standing to sue.
            (B)      The Claims Need Not Have Been Brought as a Trespass to Try Title Suit
            Another preliminary matter which must be decided before we turn to the merits of this case
is whether Claimants were required to bring this suit as a trespass to try title. To determine whether
Union Pacific and Anadarko had a duty to account to Claimants, we must determine whether
Claimants or their predecessors owned a mineral interest in the Campbell tract. Union Pacific and
Anadarko argue that, because trespass to try title is the sole method of determining ownership of real
property, Claimants were required to bring this suit as a trespass to try title.
            Section 22.001 of the Texas Property Code provides that "[a] trespass to try title action is the
method  of  determining  title  to  lands,  tenements,  or  other  real  property."  Tex.  Prop.  Code
Ann. § 22.001 (Vernon 2000). The Texas Supreme Court has held that a trespass-to-try-title action
is the exclusive method of determining title to land or real property. Martin v. Amerman, 133
S.W.3d 262, 265–67 (Tex. 2004). The trespass-to-try-title statute was enacted to provide a remedy
for the resolution of title issues and "is typically used to clear problems in chains of title or to recover
possession of land unlawfully withheld from a rightful owner." Id. at 265. Because trespass to try
title is a possessory remedy, however, a nonpossessory interest such as an overriding royalty interest
is not suitable for a trespass-to-try-title suit. T-Vestco Litt-Vada v. Lu-Cal One Oil Co., 651 S.W.2d
284, 291 (Tex. App.—Austin 1983, writ ref'd n.r.e.); Grasty v. Wood, 230 S.W.2d 568, 571 (Tex.
Civ. App.—Galveston 1950, writ ref'd n.r.e.). While this case concerns royalty interests rather than
overriding royalty interests, possession of the property is not at issue. A royalty interest is a
nonpossessory interest. Natural Gas Pipeline Co. v. Pool, 124 S.W.3d 188, 192 (Tex. 2003). 
Claimants are seeking damages for failure to account rather than attempting to gain possession of
the Campbell Tract. Because this dispute does not concern possession of real property, Claimants
were not required to bring the action in trespass to try title.



            We now turn to the substantive issues involved in this appeal which arise from the trial
court's granting summary judgment and pleas to the jurisdiction.



 
 
(2)       By Law, Because T. M. Campbell Did Not Expressly Reserve Rights to the Minerals Under
the Campbell Tract, They Passed to His Grantee, Turner, Predecessor to Claimants

            Claimants claim ownership in the right-of-way through the conveyance of a 165-acre tract
of land immediately south of the right-of-way. Union Pacific and Anadarko contend T. M. Campbell
retained the Campbell Tract when he deeded the land to Turner. We disagree. Under the strips and
gores doctrine,


 because T. M. Campbell did not expressly reserve the Campbell Tract mineral
interests,


 they passed to Turner with the Nettleton Tract.
            In Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080 (1932), the Texas Supreme
Court held there was a presumption that a deed conveys land to the center of the right-of-way even
when the deed describes the abutting land as extending only to the edge of the right-of-way. Eight
years later in Cox, the Texas Supreme Court reiterated Weed in dealing with facts virtually identical
to those alleged in this case.


 See Cox, 143 S.W.2d at 365; see also Angelo v. Biscamp, 441 S.W.2d
524, 526 (Tex. 1969) ("[A] deed to land abutting on a railroad right-of-way conveys title to the center
of the right-of-way unless a contrary intention is expressed in the instrument."); Reagan v. Marathon
Oil Co., 50 S.W.3d 70, 77 (Tex. App.—Waco 2001, no pet.). We are bound by Texas Supreme
Court precedent to hold that the Campbell to Turner deed conveyed the property interests Campbell
held to the center of the right-of-way.
            Union Pacific and Anadarko argue that the strips and gores doctrine does not apply because
the property is of significant value. The strips and gores doctrine requires the strip (1) to be small
in  comparison  to  the  land  conveyed,  (2)  to  be  adjacent  to  or  surrounded  by  the  land
conveyed, (3) to belong to the grantor at the time of conveyance, and (4) to be of insignificant or
little practical value. Alkas v. United Sav. Ass'n, 672 S.W.2d 852, 857 (Tex. App.—Corpus Christi
1984, writ ref'd n.r.e.); see Angelo, 441 S.W.2d at 526. In Cox, the Texas Supreme Court found that
the minerals immediately adjacent to the Campbell Tract were "of little practical value." Cox, 143
S.W.2d at 365. While the tract may be valuable now—and certainly the mineral production proceeds
from the Campbell Tract over at least seventy years is quite valuable—the land underneath a railroad
right-of-way was of little perceived value in 1904 before oil was discovered in the area. In
comparison to the adjacent tract explicitly conveyed to Turner, the Campbell Tract was small and
had little practical value at the time conveyed. Under the strips and gores doctrine, T. M. Campbell
did not retain any interest in the Campbell Tract. Thus, Claimants would own part of the Campbell
Tract minerals unless adverse possession changed title.
(3)       Defendants Anadarko and Union Pacific Have Title to the Mineral Interests Through
Adverse Possession Because (A) They and Their Predecessors in Title Actually Possessed
the Mineral Estate Adversely, and (B) Though a Cotenancy Existed in the Property, There
Was Constructive Notice of Repudiation of the Cotenancy by Long and Open Mineral
Production from the Property
 
            (A)      Anadarko and Union Pacific, and Their Predecessors in Title, Actually Possessed
the Mineral Estate Adversely

            Claimants argue


 that adverse possession was not established as a matter of law. We
disagree for the reasons in this and subsequent sections of this opinion.
            An adverse possession claim requires proof of six elements: (1) actual possession of the
disputed  property,  (2)  that  is  open  and  notorious,  (3)  that  is  peaceable,  (4)  under  a  claim
of right, (5) that is adverse or hostile to the claim of the owner, (6) consistently and continuously for
the duration of the statutory period. See Pool, 124 S.W.3d at 193–94; Cherokee Water Co. v.
Freeman, 145 S.W.3d 809, 817 (Tex. App.—Texarkana 2004, pet. denied); Taub v. Houston
Pipeline Co., 75 S.W.3d 606, 625 (Tex. App.—Texarkana 2002, pet. denied).
            Owners of undivided portions of oil and gas interests are tenants in common. Willson v.
Superior Oil Co., 274 S.W.2d 947, 950 (Tex. Civ. App.—Texarkana 1954, writ ref'd n.r.e.). In
addition, an oil and gas lessee of a cotenant becomes a cotenant with the cotenants of its lessor. Id. 
Absent an agreement to the contrary, a cotenant has the right to lease his or her interest without
joinder of other cotenants. Burnham v. Hardy Oil Co., 147 S.W. 330, 334 (Tex. Civ. App.—San
Antonio 1912), aff'd, 108 Tex. 555, 195 S.W. 1139 (1917). But if the lessee drills for and finds gas
or oil, the cotenant is required to account to nonparticipating cotenants for the latter's interest in the
production. Id. Due to the quitclaim deed, Union Pacific and Gregg Oil were cotenants with
Claimants and were initially required to account to Claimants for their interests in the mineral estate.
            Union Pacific and Anadarko, and their predecessors, became cotenants with Claimants by
virtue of the 1932 Nettleton quitclaim deed. Although Union Pacific and Anadarko had already
obtained a mineral lease from Fannie Campbell, the widow of T. M. Campbell, they were effectively
naked trespassers until they became cotenants by virtue of the Nettleton quitclaim deed.
            On May 2, 1931, Simpson received and recorded a mineral deed from Nettleton consisting
of twenty-five percent of the mineral estate of the Nettleton Tract. Because T. M. Campbell did not
retain any interest in the Campbell Tract, Simpson's mineral interest included a twenty-five percent
mineral interest in the Campbell Tract to the center of the right-of-way. See Cox, 143 S.W.2d at 365.
            On September 29, 1931, Gregg Oil, Anadarko's predecessor in interest, obtained an oil and
gas lease from Fannie Campbell on the Campbell Tract. Under the terms of the lease, Fannie
Campbell would receive 1/8 of the income, Union Pacific's predecessor in interest would receive
43.75%, and Anadarko's predecessor in interest would receive 43.75%. At this point, all three
parties were essentially naked trespassers. But Gregg Oil and Texas & Pacific obtained a quitclaim
deed from Nettleton for her interest in the Campbell Tract on November 7, 1932. Because Nettleton
had previously conveyed 7/8 of her interest in the mineral estate, Gregg Oil and Texas & Pacific
obtained a 1/8 interest in the Campbell Tract minerals.
            A mineral estate may be adversely possessed under the various statutes of limitations. Pool,
124 S.W.3d at 192–93; see Tex. Civ. Prac. & Rem. Code Ann. §§ 16.021, 16.024, 16.025, 16.026,
16.028, 16.029 (Vernon 2002). Union Pacific and Anadarko claim they have adversely possessed
the Campbell Tract under one of these statutes.
            Claimants argue that, because none of the tenants attempted to possess the whole mineral
interest of the land, their possession was not adverse to their cotenants. Fannie Campbell claimed
ownership of 12.5% of the income, Gregg Oil claimed 43.75% and Texas & Pacific claimed 43.75%. 
In Pool, the Texas Supreme Court held that, when a lessee retains only a royalty interest, the lessor
acquires title to "all the oil and gas and the lessor owns only a possibility of reverter and has the right
to receive royalties." Pool, 124 S.W.3d at 192. The Texas Supreme Court noted that an oil and gas
lease "is not a 'lease' in the traditional sense of a lease of the surface of real property. In a typical oil
or gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who
is actually a grantee." Id. Thus, the oil and gas lessee acquires ownership of all the minerals subject
to the possibility of reversion to the lessor. Id. Thus, as the oil and gas lessee, Anadarko and its
predecessors possessed the entire mineral estate.
            (B)      Though a Cotenancy Existed in the Property, There Was Constructive Notice of
Repudiation of the Cotenancy by Long and Open Mineral Production from the
Property

            Before the cotenant can begin to adversely possess the land, he or she must repudiate the
tenancy. Pool, 124 S.W.3d at 194; Tex-Wis Co. v. Johnson, 534 S.W.2d 895, 899 (Tex. 1976); see
Witcher v. Bennett, 120 S.W.3d 922, 925 (Tex. App.—Texarkana 2003, pet. denied).



            Anadarko and Union Pacific argue that Claimants had actual notice of the repudiation
because of the 1931 well-spacing agreement signed by Simpson.


 Yet this agreement was signed
before the creation of the cotenancy by the 1932 quitclaim deed. The cotenancy could not be
repudiated before it was even formed. Therefore, we reject Union Pacific's and Anadarko's argument
that the 1931 agreement provided actual notice of repudiation.



            Actual notice of repudiation is not required. Pool, 124 S.W.3d at 194;


 Tex-Wis Co., 534
S.W.2d at 899; see Thedford v. Union Oil Co., 3 S.W.3d 609, 614 (Tex. App.—Dallas 1999, pet.
denied). Adopting the reasoning of the Galveston Court of Civil Appeals, the Texas Supreme Court
has held that:
Such notice may be constructive and will be presumed to have been brought home
to the co-tenant or owner when the adverse occupancy and claim of title to the
property is so long-continued, open, notorious, exclusive and inconsistent with the
existence of title in others, except the occupant, that the law will raise the inference
of notice to the co-tenant or owner out of possession, or from which a jury might
rightfully presume such notice. It is held that repudiation of the claim of a co-tenant
and notice thereof may be shown by circumstances and that a jury may infer such
facts from long continued possession of the land under claim of ownership and
non-assertion of claim by the owners.

Tex-Wis Co., 534 S.W.2d at 899 (quoting Mauritz v. Thatcher, 140 S.W.2d 303, 304 (Tex. Civ.
App.—Galveston 1940, writ ref'd)); accord Pool, 124 S.W.3d at 194. Constructive notice can be
established by (1) long-continued possession, or (2) change in the use or character of possession of
the land. Tex-Wis Co., 534 S.W.2d at 901; Witcher, 120 S.W.3d at 924–25.
            For close to seventy years, Gregg Oil and its successors have been extracting oil from the
Campbell Tract and currently continue to extract oil. The royalties on the six acres have been paid
to the holders of the Union Pacific, Anadarko, and Campbell interests for close to seventy years. In
addition, the Defendants paid taxes on the property for seventy years.


 The appropriate tax records
and Railroad Commission records were filed. The oil wells and the operations were in plain view
during this entire period. More than enough time has passed for the cotenancy to be repudiated and
the ten-year statute of limitations to run.


 Because Claimants had constructive notice of repudiation,
and because Union Pacific, as an oil and gas lessee, has possessed the whole of the mineral estate,
Claimants' mineral interests in the Campbell Tract have been adversely possessed. As a matter of
law, Claimants had constructive notice of repudiation through long and continuous use by
Defendants and their predecessors.
(4)       Estoppel by Deed Does Not Apply
            Claimants argue that Fannie Campbell is estopped by virtue of the deed to Turner.


 Again,
we disagree. Because the deed is ambiguous, because Fannie Campbell "re-entered" the property
after the execution of the deed, and because the deed has effectively been repudiated by long use
under Campbell, estoppel by deed does not apply.



            Estoppel by contract or deed prevents a party from taking a position inconsistent with the
contract to the prejudice of another. Hawn v. Hawn, 574 S.W.2d 883, 886 (Tex. Civ.
App.—Eastland 1978, writ ref'd n.r.e.); see Ex parte Payne, 598 S.W.2d 312, 317 (Tex. Civ.
App.—Texarkana 1980, orig. proceeding). The Texas Supreme Court has held:
It is a general rule, supported by many authorities, that a deed purporting to convey
a fee simple or a lesser definite estate in land and containing covenants of general
warranty of title or of ownership will operate to estop the grantor from asserting an
after-acquired title or interest in the land, or the estate which the deed purports to
convey, as against the grantee and those claiming under him.

Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878, 880 (1940); see Gutierrez v.
Rodriguez, 30 S.W.3d 558, 561 (Tex. App.—Texarkana 2000, no pet.).
            But the deed must be clear and unambiguous in order for estoppel by deed to apply. 
Kuykendall v. Spiller, 299 S.W. 522, 527 (Tex. Civ. App.—Fort Worth 1927, writ ref'd); cf.
Freeman, 145 S.W.3d at 816. The Campbell deed did not describe the Campbell Tract, so none
could claim it clearly and unambiguously described the Campbell Tract interests in dispute.
            In addition, estoppel by deed does not apply when a grantor re-enters the property after the
execution of the deed. McLaren, 811 S.W.2d at 568–89. By the oil and gas lease from Fanny
Campbell, she effectively re-entered the property after her husband executed the 1904 deed to
Turner.
            Also, a party is not estopped by a deed if he or she repudiates the deed and gives notice of
such repudiation to the record owner. Id. at 568 (citing Sweeten, 276 S.W.2d at 797). In the same
way that the long use of the Campbell Tract minerals by Defendants and their predecessors provided
constructive notice of repudiation of the cotenancy, it also provided constructive notice of
repudiation of the deed as a matter of law.
            Because the Campbell to Turner deed did not clearly and unambiguously describe the
Campbell Tract minerals in dispute, the grantor's successor re-entered the property after execution
of the deed, and Claimants and their predecessors have received constructive notice of repudiation
of the deed, estoppel by deed does not bar adverse possession under the facts of this case.
(5)       There Is No Evidence of Fraudulent Concealment
            Claimants argue that limitations—as to title and as to a cause of action for an
accounting—have been tolled due to fraudulent concealment. Claimants argue that Union Pacific,
Anadarko, and their predecessors filed fraudulent tax returns,


 filed fraudulent well-spacing
exceptions, and failed to give notice to Claimants of the well-spacing applications. None of these
allegations create a fact issue concerning whether the Defendants or predecessors used deception to
conceal their actions. Claimants have presented no more than a scintilla of evidence that Union
Pacific or Anadarko, or their predecessors, used deception to conceal.
            Fraudulent concealment is an equitable defense to limitations that estops the concealer from
relying on the statute of limitations. Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983). 
Fraudulent concealment tolls the statute of limitations until the injured party, using reasonable
diligence, discovered or should have discovered the injury. KPMG Peat Marwick v. Harrison
County Hous. Fin. Corp., 988 S.W.2d 746, 750 (Tex. 1999).
The elements of fraudulent concealment are: (1) the existence of the underlying tort;
(2) the defendant's knowledge of the tort; (3) the defendant's use of deception to
conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.
Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied);
see HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998).
            According to Claimants, Union Pacific, Anadarko, and their predecessors committed
fraudulent concealment because they failed to correct the recital contained in the 1931 well-spacing
agreement. The 1931 well-spacing agreement recited: "Whereas, the above tract of land adjoins the
right-of-way of the Texas & Pacific Railroad which right-of-way is under lease for oil and gas
purposes to Gregg Oil Co." Union Pacific, Anadarko, or their predecessors in interest were not
parties to the 1931 well-spacing agreement. The agreement was between various landowners,
including Claimants' predecessor in interest, and Tidal Oil. The failure to correct another's
misstatement is not a fraudulent failure to disclose. Lesiker v. Rappeport, 33 S.W.3d 282, 298–99
(Tex. App.—Texarkana 2000, pet. denied).
            In addition, Claimants contend that a letter addressed to J. C. Hunter, president of Gregg Oil,
from W. W. Fleming, president of Mid-Kansas Oil and Gas Company,


 represents "ground zero"
of the fraud perpetrated by Gregg Oil. The letter, though, concerns the spacing of wells rather than
any agreement to defraud Claimants' predecessors. The letter includes this text:
In your letter you advise that you have made a proposed location on a lease executed
by the Texas and Pacific Railway Company to your company covering the railroad
right of way immediately north and adjacent to our E.M. Nettleton farm. . . . It is
further my understanding that this location will cause you to drill your well 49 feet
from our north line.
 
Mr. Hasson advises me that he has discussed this matter with Mr. Batenman and you
and that if we agree to this location and not contest the location before the Railroad
Commission, you will agree to cooperate with us when we make a location on our
tract.
 
It would be our intention in agreeing to your location, that when we drill not to
directly offset your well but to move to a location further east and at a selected point
further east locate a well to be considered an offset to this proposed location of yours,
putting it the same distance south of our north line that your well is north of our north
line. In other words, it would be the plan of both your company and ours to avoid
unnecessary drilling and to avoid too close drilling of wells and to stagger locations
as drilling is demanded, rather than drill direct offsets close to each other.

This letter is no more than a scintilla of evidence of fraudulent concealment. Claimants argue that
Union Pacific, Anadarko, and their predecessors committed fraudulent nondisclosure because they
had a duty to disclose. In support of this proposition, Claimants cite Courseview, Inc. v. Phillips
Petroleum Co., 158 Tex. 397, 312 S.W.2d 197, 204–05 (1957); Zimmerman v. First Am. Title Ins.
Co., 790 S.W.2d 690, 699–00 (Tex. App.—Tyler 1990, writ denied); Gibson v. Burkhart, 650
S.W.2d 185, 188–89 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.). These opinions, though,
are distinguishable from this case because each involved fraud by a fiduciary or a trustee. Absent
an agreement to the contrary, a cotenant has no fiduciary obligation to the other cotenants. Scott v.
Scruggs, 836 S.W.2d 278, 282 (Tex. App.—Texarkana 1992, writ denied); Donnan v. Atl. Richfield,
732 S.W.2d 715, 717 (Tex. App.—Corpus Christi 1987, writ denied); Hamman v. Ritchie, 547
S.W.2d 698, 706 (Tex. Civ. App.—Fort Worth 1977, writ ref'd n.r.e.). Claimants have failed to
establish an agreement or other facts creating a fiduciary relationship or other special relationship
giving rise to a duty to disclose. There is no evidence that Union Pacific or Anadarko, or their
predecessors, had a duty to disclose. A failure to disclose is fraud only when there is a duty to
disclose. Beverick v. Koch Power, Inc., No. 01-03-01300-CV, 2005 Tex. App. LEXIS 10674 (Tex.
App.—Houston [1st Dist.] Dec. 29, 2005, no pet. h.).
            In addition, Claimants should have discovered the injury long ago. The doctrine of
fraudulent concealment tolls the statute of limitations only until the plaintiffs, using reasonable
diligence, discovered or should have discovered the cause of action. KPMG Peat Marwick, 988
S.W.2d at 750. Claimants' predecessors in interest were placed on notice in the 1930s. The wells
on the property, dating from the early 1930s, were clearly visible, and there is no evidence that
Anadarko or its predecessors conducted their activities in a clandestine manner.


 This Court has
recently held there is no fraudulent concealment when the "well sites were in plain view on the
property." Taub, 75 S.W.3d at 620. In 1931, Simpson, Claimants' predecessor, signed a well-
spacing agreement which noted that the right-of-way was under lease to Gregg Oil. Although
Claimants allege they were placed on notice only in 2000, Claimants and their predecessors should
have discovered the injury decades ago by using reasonable diligence.
            Claimants produced evidence only that Union Pacific, Anadarko, and their predecessors
never told them that Claimants actually owned the Campbell Tract. That is not fraudulent
concealment. "A record titleholder's ignorance of what [he or she] owns does not affect the running
of limitations." Pool, 124 S.W.3d at 198.
            In the words of a recent Texas Supreme Court opinion, "[w]e conclude that 'time, which
buries in obscurity all human transactions, has achieved its accustomed effects upon this.'" 
Chapman, 118 S.W.3d at 755 (quoting Prevost v. Gratz, 19 U.S. 481, 495 (1821)). While Claimants
have presented some suspicion that Gregg Oil and Texas & Pacific conspired to commit fraud or
other deceptive practices, "some suspicion linked to other suspicion produces only more suspicion,
which is not the same as some evidence." Id. (quoting Browning-Ferris, Inc. v. Reyna, 865 S.W.2d
925, 927 (Tex. 1993)). Claimants' claims of fraud amount to little more than suspicion based on the
unavailability of complete records and witnesses more than seventy years later. In this case, more
than seventy years have passed since apparent oil production began. Many of the corporations
involved are no longer in existence, and most of the witnesses are no longer available. Time has
indeed obscured the events in question. Because Claimants have failed to present more than a
scintilla of evidence of fraudulent concealment and should have discovered the alleged fraud, if any,
years ago, we overrule Claimants' point of error.
(6)       Limitations Bars Any Claim for an Accounting for the Production Taken from the Property
Before Adverse Possession Title Ripened
            Although we have determined that the Campbell Tract has been adversely possessed, a
remaining issue is whether Claimants can maintain suit for the failure of Union Pacific, Anadarko,
and their predecessors to account for production before adverse possession title ripened. Union
Pacific and Anadarko both raise a counterpoint alleging that Claimants' claims are barred by
limitations. Claimants argue that any statute of limitations was tolled by fraudulent concealment.



            Union Pacific and Anadarko argue that the four-year statute of limitations applies to suits for
accounting. See Birdwell v. Am. Bonding Co., 337 S.W.2d 120, 128 (Tex. Civ. App.—Fort Worth
1960, writ ref'd n.r.e.); see also Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon 2002). 
However, the Waco Court of Appeals has held that a suit for accounting brought by a cotenant who
was not a party to the lease is a suit to recover personal property to which the two-year statute of
limitations applies. Easterling v. Murphey, 11 S.W.2d 329, 334 (Tex. Civ. App.—Waco 1928, writ
ref'd) (suit barred by predecessor to current two-year statute of limitations); see 55A Tex. Jur. 3d
Oil and Gas § 285 (2004); see also Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp.
2005). Regardless of whether the two-year or four-year statute of limitations applies, the Claimants'
suit is barred by the statute of limitations.
            A cause of action accrues, for the purposes of limitations, when the claimant's injury occurs. 
Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997). A defendant moving for summary
judgment on the affirmative defense of limitations has the burden to (1) conclusively prove when
the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or
otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about
when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the
nature of its injury. KPMG Peat Marwick, 988 S.W.2d at 748.
            Claimants argue that Union Pacific, Anadarko, and their predecessors filed fraudulent tax
returns and fraudulent well-spacing documents, fraudulently concealed their duty to account, failed
to give notice to Claimants of the well-spacing applications in 1931 and 1936, and failed to correct
an error in a letter from Tidal Oil to Gregg Oil. But, as we have discussed above, Claimants failed
to present more than a scintilla of evidence of fraudulent concealment. Therefore, the statute of
limitations was not tolled. Since the property was adversely possessed as a matter of law more than
four years ago, Union Pacific and Anadarko have established as a matter of law that the statute of
limitations barred suit on Claimants' claims for the alleged failure to account.
 
 
Conclusion
            Although Claimants have standing to bring suit, their claims are barred by the statute of
limitations. T. M. Campbell effectively deeded the Campbell Tract to Turner to the center of the
right-of-way. Therefore, when Nettleton granted Union Pacific's predecessor in interest a quitclaim
deed to the right-of-way, Union Pacific's predecessor in interest became a cotenant with Claimants. 
But in the seventy years that have passed since that time, Union Pacific and Anadarko, or their
predecessors, have obtained title to Claimants' mineral interest through adverse possession. 
Claimants had constructive notice of repudiation of the cotenancy and of the Campbell deed, and
limitations title has accrued. Last, the four-year statute of limitations bars suit for Union Pacific's
and Anadarko's failure to account before the tract was adversely possessed.
            We affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 1, 2005
Date Decided:             February 17, 2006