Order filed July 19, 2007


















 
 
  
 
 







 
 
  
 
 




Order filed July 19, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00064-CV 

                                                     __________

 

                                       STATE
OF TEXAS,
Appellant   

                                                             V.

            JOHN
S. BEESON, TRUSTEE, AS SUCCESSOR-IN-INTEREST 

             TO
RICHARD C. BUMSTEAD AND SYLVIA M. BUMSTEAD, 

                        JOHN
BEESON, AND PAUL SIROTA, Appellees 

 



 

                                         On
Appeal from the 157th District Court

                                                          Harris County,
Texas

                                              Trial
Court Cause No. 2002-22,286

 



 

                                                                     O
R D E R

 

Our former opinion and judgment dated February 8,
2007, are withdrawn, and our opinion and judgment dated July 19, 2007, are
substituted therefor.  The motion for
rehearing filed by John S. Beeson, Trustee, as successor-in-interest to Richard
C. Bumstead and Sylvia M. Bumstead, John Beeson, and Paul Sirota is overruled.

 

TERRY McCALL

July 19,
2007                                                               JUSTICE

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











 
 
  
 
 







 
 
  
 
 




Opinion filed July 19, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of
Appeals

                                                                   __________

 

                                                          No. 11-05-00064-CV 

                                                     __________

 

                                       STATE OF TEXAS, Appellant   

                                                             V.

            JOHN S. BEESON, TRUSTEE, AS
SUCCESSOR-IN-INTEREST 

             TO RICHARD C. BUMSTEAD AND SYLVIA
M. BUMSTEAD, 

                        JOHN BEESON, AND PAUL
SIROTA, Appellees 

 



 

                                         On
Appeal from the 157th District Court

                                                          Harris County,
Texas

                                              Trial
Court Cause No. 2002-22,286

 



 

                                                                   O
P I N I O N

 

This appeal arises from a lawsuit filed by
appellees (landowners) against the State of Texas to establish an easement across an
abandoned railroad right-of-way that adjoins their property.   The landowners contend that they possess an
easement by necessity or, alternatively, a prescriptive easement to cross the
railroad right-of-way in order to access a public road that runs along the
opposite side of the railroad right-of-way. 
After considering the parties=
competing motions for summary judgment, the trial court determined that the
landowners established both of their easement claims as a matter of law.  








We reversed the judgment of the trial court and
rendered judgment in favor of the State in our initial opinion and judgment
issued on February 8, 2007.  The
landowners subsequently filed a  motion
for rehearing on March 28, 2007, challenging our rejection of their
prescriptive easement claim.  The State
filed a response to the landowners=
motion for rehearing on May 3, 2007.  For
the first time in this appeal, the State asserted in its response to the motion
for rehearing that the landowners=
claims are barred by sovereign immunity.  


Ordinarily, we would deem a new argument raised
after the issuance of our opinion and judgment to be waived.  This general rule is inapplicable, however,
because the State=s
sovereign immunity contention involves subject matter jurisdiction.  Tex.
Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225‑26 (Tex. 2004) (sovereign
immunity from suit defeats a court=s
subject matter jurisdiction).  An issue
of subject matter jurisdiction can be raised at any time, A[e]ven after all proceedings have long
ago come to an end.@  Univ. of Tex.
Sw. Med. Ctr. at Dallas v. Loutzenhiser, 140
S.W.3d 351, 358 (Tex.
2004).  Accordingly, we are required to
consider the State=s belated
assertion that the landowners=
claims are barred by sovereign immunity. 


A plea questioning the trial court=s subject matter jurisdiction raises a
question of law that we review de novo.  See
Miranda, 133 S.W.3d at 226.  We focus
first on the plaintiff=s
petition to determine whether the facts pleaded affirmatively demonstrate that
subject matter jurisdiction exists. Id.
at 226.  If the pleadings are insufficient
to establish jurisdiction but do not affirmatively demonstrate an incurable
defect, the plaintiff should be afforded the opportunity to replead.  Id.
at 226-27.  A plea should not be granted
if a fact issue is presented as to the court=s
jurisdiction, but if the pleadings affirmatively demonstrate an incurable
jurisdictional defect, then the plea to the jurisdiction must be granted.  Id.
at 227-28.  As set forth in greater
detail below, we conclude that the sovereign immunity claim is valid because
the landowners= suit B filed solely against the State without
legislative consent B
constitutes an incurable jurisdictional defect.

                                                               Background
Facts








The landowners own two small, neighboring tracts
of real property that lie immediately north of the railroad right-of-way.  A public highway known as A
Old Katy Road
@
runs along the corresponding southern boundary of the railroad
right-of-way.  Accordingly, the State of Texas owns the property
located on the other side of the railroad right-of-way.[1]  

The parties=
respective tracts have a common source of title:  a 655-acre tract acquired by Max and Eliza
Roy prior to 1893.  In a judgment entered
on January 18, 1893,[2]
a trial court condemned a railroad right-of-way across the original Roy tract in favor of the Missouri Kansas & Texas
Railway Company of Texas.  The area condemned consisted of a 100-feet
wide right-of-way running east/west across the northern portion of the Roys= large tract.  The railroad easement bisected the Roy tract into two
tracts: a relatively narrow strip of land lying north of the railroad
right-of-way and a large tract of land lying south of the right-of-way.  A very narrow strip of the original Roy tract located along
the northern line of the railroad right-of-way constitutes the southernmost
portion of the landowners=
two tracts.  With respect to the land
lying immediately south of the right-of-way, the Roys
conveyed a 7.8-acre strip of land running parallel and adjacent to the railroad
right-of-way to Harris
 County on March 30,
1896.  This property has been utilized as
Old Katy Road
for many years.

From 1893 until the 1990s, the right-of-way was
continuously used for railroad purposes. 
In 1992, the State purchased the railroad right-of-way from the
successor-in-interest of the original railroad company.[3]  Pursuant to the terms of the purchase
agreement between the railroad company and the State, the railroad company
abandoned its use of the railroad right-of-way in 1998.  This appeal concerns the use of the
right-of-way by the adjoining property owners after its abandonment by the
railroad company.








The property descriptions contained in the conveying
instruments for the tracts located north and south of the railroad right-of-way
do not include the property located within the right-of-way.  The parties executed a ARule 11 Agreement@ wherein they stipulated that, upon the
railroad company=s
abandonment of the right-of-way, the landowners own the northern half of the
right-of-way and the State owns the southern half of the right-of-way.  Since the parties acknowledge the landowners= ownership of the northern half of the
right-of-way, the issues in this appeal focus on  the landowners=
right to cross the southern half of the right-of-way.

The landowners=
property consists of two tracts that are 7.0065 acres and 5.7923 acres in
size.  Their two tracts are separated by
a private road know as A
Walne Street
.@ 
Walne Street
is a paved road that runs across the right-of-way and intersects with Old Katy Road
.[4]  The landowners used Walne Street to access Old Katy Road prior to the railroad=s abandonment of the right-of-way.  They contend that they possess an easement to
continue using Walne Street
to access Old Katy Road
.  The landowners base their claim of an
easement by necessity on the contention that the Roys reserved the right to cross the railroad
right-of-way in order to access both portions of their property lying north and
south of the right-of-way.  The
landowners base their prescriptive easement claim on the contention that Walne Street has
been used by them to access Old
 Katy Road at least since 1975.   The trial court decreed in its final
judgment that the landowners are the owners of an easement for the purpose of
providing them access to the public road system across the portion of Walne Street which
lies on the southern half of the railroad right-of-way.

                                                              Sovereign
Immunity

The State argues in its response to the landowners= motion for rehearing that it has  sovereign immunity from the landowners= trespass to try title action.  The State cites State v. Lain, 349
S.W.2d 579, 582 (Tex.
1961), in support of this proposition. 
The supreme court held in Lain that A[w]hen
in this state the sovereign is made a party defendant to a suit for land,
without legislative consent, its plea to the jurisdiction of the court based on
sovereign immunity should be sustained.@  The court further held that, if state
officials are named as defendants in either their official or individual
capacities, they are not entitled to rely on sovereign immunity to defeat the
court=s subject
matter jurisdiction.  Id. 
Lain is potentially applicable to this case because the landowners
only named the State as a defendant as opposed to suing individual state
officials.








The landowners contend that Lain only
applies to a trespass to try title action and that their easement claims are
not properly characterized as a trespass to try title action because they do
not concern title to land.  Instead, the
landowners assert that their easement claims can be asserted in a declaratory
judgment action.   The landowners pleaded
their easement claims under the heading of ATrespass
to Try Title and Declaratory Judgment@
in their fourth amended original petition. 
The use of this heading is not controlling, however, because we look to
the substance of a pleading rather than its caption or format to determine its
nature. See Surgitek, Bristol‑Myers Corp. v. Abel, 997 S.W.2d 598,
601 (Tex.
1999).  We agree with the landowners= assertion that a declaratory judgment
action is an appropriate procedural vehicle for litigating a claim to establish
a prescriptive easement.  See Roberson
v. City of Austin, 157 S.W.3d 130, 135-37 (Tex. App. B Austin 2005, pet. denied).  However, we disagree with the landowners= contention that sovereign immunity
does not bar their declaratory judgment action brought solely against the
State.  

The landowners cite Texas Natural Resource
Conversation Commission v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002), for the
proposition that Ano
consent is required when suit is filed seeking only a declaration or
enforcement of rights@
in a declaratory judgment action filed against the State.  We disagree. 
IT-Davy does not stand for this proposition.








The plaintiff in IT-Davy filed a
declaratory judgment action against the Texas Natural Resource Conservation
Commission concerning a contract it entered with the Commission.  Id.
at 851-52.  The plaintiff sought a
declaration of the State=s
obligations under the contract.  The
landowners in our case cite a preliminary portion of the court=s opinion where it discussed
declaratory judgment actions filed against state officials.  The court stated that private parties may
seek declaratory relief against state officials who allegedly act without legal
or statutory authority.  Id. at 855.  The landowners rely upon this statement to
assert that they are not required to establish the State=s
consent to this suit because they are only seeking a declaration or enforcement
of rights.      The landowners=
reliance upon IT-Davy is misplaced. 
The statement from IT-Davy that the landowners rely upon is
limited to certain declaratory judgment actions brought against state
officials.  This limitation is reflected
by the court=s comment
that these declaratory judgment actions do not implicate sovereign immunity
because they do not constitute Asuits
against the State.@[5]  Id.  Simply put, the landowners= easement claims constitute a suit
against the State because they named the State as a party defendant to the
suit; they did not sue state officials in this case.  The court expressly held in IT-Davy  that A[a]
plaintiff who sues the State must establish the State=s
consent to suit.@ Id. at 855.  Only the legislature can waive the State=s sovereign immunity from suit.  Id.
at 857-58.  Accordingly, the landowners
are incorrect in their assertion that they do not need legislative consent to
bring this action against the State.

The landowners do not assert that the State
consented to this lawsuit in their responses to the State=s sovereign immunity contention.  However, the landowners included an
allegation in their pleadings that all conditions precedent to filing this suit
against the State have been met.  Relying
upon Tex. R. Civ. P. 54, the
landowners additionally argue that they are not required to prove legislative
consent for this suit against the State because the State did not specifically
deny the failure of the landowners to obtain legislative consent.  We disagree. 
A court=s subject
matter jurisdiction is not merely a condition precedent to filing suit.  Furthermore, the application of Rule 54
suggested by the landowners conflicts with the principle that subject matter
jurisdiction can be raised at any time, even for the first time on appeal.

The landowners=
easement claims brought against the State as a party defendant are barred by
sovereign immunity.  The trial court did
not have subject matter jurisdiction. 
Accordingly, we vacate the trial court=s
judgment and dismiss the landowners=
claims for want of jurisdiction.

                                                                 Merits
of Appeal

In the event we have erred in determining that
sovereign immunity bars the landowners=
easement claims, we will address the merits of the appeal. 

                                                              Standard
of Review








When competing motions for summary judgment are
filed and one is granted and the other denied, the reviewing court must review
the summary judgment evidence presented by both sides and determine all
questions presented.  Comm=rs Court of Titus County v. Agan,
940 S.W.2d 77, 81 (Tex.
1997).  We review the trial court=s summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005); Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211,
215 (Tex.
2003).  The landowners filed a
traditional motion for summary judgment while the State sought summary judgment
on both traditional and no-evidence grounds. 
In a summary judgment motion brought under Tex. R. Civ. P. 166a(c), the moving party has the burden of
showing that there is no genuine issue as to any material fact and that it is
entitled to judgment as a matter of law. Browning v. Prostok, 165 S.W.3d
336 (Tex.
2005); Knott, 128 S.W.3d at 215-16. 
A summary judgment motion pursuant to Tex.
R. Civ. P. 166a(i) is essentially a motion for a pretrial directed
verdict.  Mack Trucks, Inc. v. Tamez,
206 S.W.3d 572, 581 (Tex.
2006).  Once such a motion is filed, the
burden shifts to the nonmoving party to present evidence raising an issue of
material fact as to the elements specified in the motion.  Tamez, 206 S.W.3d at 582; W. Invs.,
Inc. v. Urena, 162 S.W.3d 547, 550 (Tex.
2005).  We review the evidence presented
by the summary judgment motion and response in the light most favorable to the
party against whom the summary judgment was rendered, crediting evidence
favorable to that party if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not. 
Tamez, 206 S.W.3d at 582; see Goodyear Tire &
Rubber Co. v. Mayes, No. 04-0993, 2007 WL 1713400 (Tex. Jun. 15, 2007); Sudan v. Sudan,
199 S.W.3d 291, 292 (Tex. 2006); Wal-Mart Stores, Inc. v. Spates,
186 S.W.3d 566, 568 (Tex. 2006);  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

                                                                 Issues
on Appeal

The State raises seventeen issues on appeal.  Its first, second, third, fourth, fifth,
sixth, fifteenth, and sixteenth issues deal solely with the landowners= claim of an easement by
necessity.  Its seventh, eighth, ninth,
tenth, eleventh, twelfth, thirteenth, and fourteenth issues deal solely with
the landowners=
prescriptive easement claim.  The State=s seventeenth issue concerns the trial
court=s rulings
on the State=s
objections to the landowners=
summary judgment evidence.

                                                            Easement
by Necessity








The landowners contend that the Roys reserved an easement by implication to
cross the railroad right-of-way.  They
base this contention on the allegation that an easement across the right-of-way
was necessary for the Roys
to access both portions of their property that were bisected by the
right-of-way.[6]  A party claiming an easement by necessity
exists must demonstrate (1) unity of ownership prior to the separation, (2) the
access is a necessity and not a mere convenience, and (3) the necessity must
exist at the time of severance of the two estates.  Koonce v. Brite Estate, 663 S.W.2d
451, 452 (Tex.
1984).[7]  The party claiming an easement by necessity
has the burden of proving his entitlement to same.  See Miller v. Elliott, 94 S.W.3d 38,
43 (Tex. App.CTyler
2002, pet. denied).

In its first and second issues, the State contends
that there is no evidence to support the Anecessity@ element.  The degree of Anecessity@ required to support a finding of an
implied easement by reservation is strict necessity.  Drye v. Eagle Rock Ranch, Inc., 364
S.W.2d 196, 208 (Tex.
1962). If a landowner can access his property by other means, he cannot claim a
right by implication to pass over the land of another to reach his
property.  Duff v. Matthews, 311
S.W.2d 637, 640-41 (Tex.  1958). 
The burden is on the party seeking to establish an implied reservation
of a roadway to exclude, by proof, the possibility of another way of ingress
and egress except the way claimed.  Id.  Easements by necessity are temporary because
their existence is dependent on the necessity that created them.  Bains v. Parker, 182 S.W.2d 397, 399 (Tex. 1944).  Easements by necessity terminate upon the
cessation of the necessity.  Id.  Accordingly, the landowners were required to
show that the necessity, if any, which existed at the time of the severance of
the estates in 1893 existed until the time of trial.  See Miller, 94 S.W.3d at 44.








The landowners do not have any evidence of the
manner in which the Roys
used the property at the time that the railroad right-of-way came into
existence in 1893.  Instead, they rely
upon the general allegation that the Roys
would have needed to cross the right-of-way to access the northern strip of
their property that was cut off from the remainder of their large tract by the
right-of-way.  They cite Missouri-Kanasas-Texas
Ry. Co. of Texas v. Cunningham, 273 S.W. 697, 699-701 (Tex. Civ. App.CAmarillo 1925, no writ), as a specific
example of a Texas
court recognizing the existence of an easement by necessity when a railroad
right-of-way severs an enclosed tract of property.  The court held in Cunningham that an
easement is reserved by the landowner by implication to cross the right-of-way
to access both portions of his enclosed property when his only access to both
portions is across the right-of-way.  Id.

While Cunningham appears to be applicable
to this appeal, the evidence offered in support of the easement in Cunningham
differs greatly from the evidence which exists in this appeal.  The claimant in Cunningham was the
original owner of the tract of property bisected by the railroad
right-of-way.  Id. at 698.  He submitted evidence of his actual use of
his tracts of property since the time of the severance and his manner of
accessing one tract from the other by using a passageway under a wooden bridge
that supported the railroad tract since its construction.  Id.

The landowners base their claim of an easement by
necessity on the assumption that the Roys
would have needed to cross the right-of-way to access a thin, 2.5-acre
wedge-shaped tract of their original tract. 
The southernmost portion of the landowners=
two tracts are derived from this 2.5-acre tract.  However, the landowners have no evidence of
the manner in which the Roys
may have actually used the 2.5-acre tract. 
In the absence of evidence of actual use, there is no evidence that the Roys had a need to access
the 2.5-acre tract after the railroad crossed their property.  There is no evidence that the Roys had a necessity to
cross the right-of-way at a point located along the southern boundary lines of
the landowners=
tracts.  Specifically, the 2.5-acre tract
was approximately 2,900 lineal feet in length along the northern line of the right-of-way.  The southern boundary of the landowners= two tracts (including Walne Street
) only
occupied approximately 1,200 feet of the 2.5-acre tract=s
linear run along the right-of-way.  The
landowners have no evidence that excludes the possibility that the Roys used some other
point along the 2.5-acre=s
tract linear run to cross the right-of-way. 
Furthermore, the Roys
possessed an additional 52.82-acre tract located along the northern line of the
right-of-way that they could have used to access the 2.5-acre tract.[8]  Moreover, the Roys conveyed the 2.5-acre tract in
1924.  The landowners do not have any
evidence that the necessity, which the Roys
may have possessed to access the 2.5-acre tract in 1893, continued to exist
after its conveyance.








The State=s
first and second issues are sustained. 
We do not reach the State=s
remaining issues pertaining to the landowners=
claim of an easement by necessity (Issues Nos. Three, Four, Five, Six, Fifteen,
and Sixteen) in light of our determination that there is no evidence to support
the element of necessity.  See Tex. R. App. P. 47.1.

                                                            Prescriptive
Easement

A person acquires a prescriptive easement by the
open, notorious, continuous, exclusive, and adverse use of someone else=s land for ten years.  See Brooks v. Jones, 578 S.W.2d 669,
673 (Tex.
1979); Mack v. Landry, 22 S.W.3d 524, 531 (Tex. App.CHouston [14th Dist.] 2000, no pet.); Stallman
v. Newman, 9 S.W.3d 243, 248 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied).  The
landowners rely upon the following affidavit testimony of John S. Beeson to
support its prescriptive easement claim:

1.         I
am personally familiar with the 7.0065-acre and 5.7923-acre tracts of land that
are involved in this lawsuit and the location of the road known as Walne
Street, a 30-foot-wide road that runs in a north-south direction between the
7.0065-acre and 5.7923-acre tracts.

 

2.         At
least since 1975, the 7.0065-acre and 5.7923-acre tracts, as well as a (sic)
properties located to the north of these tracts, have accessed the public
highway system across the 100-foot-wide railroad right-of-way located to the
south of these tracts using Walne
 Street
, which is a private road paved over the
railroad right-of-way.  Immediately south
of the railroad right-of-way is the public thoroughfare known as Old Katy Road
.  These properties do not have any other access
to the public highway system except across the railroad right-of-way at this
location to Old Katy Road
.  According to my research, this private road
crossing at Walne Street
was not subject to a written crossing agreement with the railroad.

 

Thus, the landowners contend that they possess a prescriptive
easement to cross the right-of-way by virtue of Walne Street
=s
existence at least since 1975.








In its seventh and eighth issues, the State
contends that the landowners=
prescriptive easement claim is barred by Tex.
Civ. Prac. & Rem. Code Ann. '
16.030(b) (Vernon 2002).  This statute
provides that A[a]
person may not acquire through adverse possession any right or title to real
property dedicated to public use.@  The State formally dedicated the right-of-way
for highway purposes upon its purchase from the railroad in 1992.  The landowners contend the statute does not
bar their claim because their prescriptive easement ripened into existence
prior to 1992.  Even if we assume
that  a prescriptive easement vested in
favor of the landowners to cross the railroad right-of-way prior to its
dedication by the State to public use in 1992, we conclude that it did not run
against the State=s
interest in the property prior to the railroad=s
abandonment of the right-of-way.

The resolution of the landowners= prescriptive easement claim hinges
upon two key questions.  The first
question concerns the nature of the State=s
property interest in the southern half of the railroad right-of-way prior to
the railroad=s
abandonment. The State=s
characterization of its interest in the right-of-way has not been a model of
clarity or consistency in this appeal. 
In its initial brief, the State described its interest in the
right-of-way prior to abandonment as a Areversionary
interest.@  The State subsequently characterized the
interest as a Afee@ interest in its reply brief.[9]  The landowners contend that the State waived
its argument that its pre-abandonment interest in the right-of-way constituted
a fee interest.  We disagree.  The State=s
interest in the right-of-way was created in the 1896 deed from the Roys to Harris
 County.  The construction of an unambiguous deed is a
question of law for the court to resolve. 
Luckel v. White, 819 S.W.2d 459, 461 (Tex.
1991); Altman v. Blake, 712 S.W.2d 117, 118 (Tex. 1986).








Ordinarily, we construe deeds by ascertaining the
intent of the parties as expressed within the four corners of the
instrument.  Luckel, 819 S.W.2d at
461.  The 1896 deed from the Roys to Harris
 County conveyed a fee
simple interest in the land conveyed for Old Katy Road
.  State v. Fuller, 407 S.W.2d 215,
220  (Tex. 1966). 
However, as noted previously, the property description in the Roys=
deed to Harris County did not include the adjacent
property located within the railroad right-of-way.  Texas
courts have adopted a rule of construction that addresses this situation: AIt is well settled that a deed to land
abutting on a railroad right‑of‑way conveys title to the center of
the right‑of‑way unless the contrary intention is expressed in the
instrument.@  Id.
at 218; see Cox v. Campbell, 143 S.W.2d
361, 366 (Tex.
1940). The landowners argue that the rule recognized in Fuller does not
apply in this case because the Roys owned the
property on both sides of the railroad right-of-way when they conveyed the
strip of land located south of the right-of-way to Harris County.  We disagree. 
The Texas Supreme Court appeared to have adopted the exception urged by
the landowners in the early case of Couch v. Texas & Pacific Railway Co.,
90 S.W. 860, 860-61 (Tex. 1906). But as correctly noted by the Waco Court of
Appeals in Reagan v. Marathon Oil Co., 50 S.W.3d 70, 77-79 (Tex. App.CWaco 2001, no pet.), the Texas Supreme
Court subsequently disavowed this exception to the general rule in Haines v.
McLean, 276 S.W.2d 777, 780 (Tex. 1955), and Cox, 143 S.W.2d at
365-66.

The supreme court stated in Fuller that the
adjoining landowners Abecame
the owners, subject to the easement@
of their respective halves of the right-of-way by virtue of the deed conveying
the adjoining property to them.  407
S.W.2d at 218. The Dallas Court of Appeals subsequently interpreted this aspect
of Fuller in Auerbach v. Dallas Area Rapid Transit, No.
05-94-01207-CV, 1995 WL 447530 (Tex. App.CDallas
July 26, 1995, writ denied) (not designated for publication).  In Auerbach, the court characterized
the adjoining landowners=
interest prior to abandonment as Aa
fee simple interest subject to an easement, not a conditional or contingent
interest fee simple.@  Id.
at *2. We agree with Auerbach=s
interpretation of Fuller.  As
an adjoining landowner, the State possessed a fee simple interest subject to
the railroad=s use of
the right-of-way.  The State=s fee interest came into existence at
the time of the 1896 deed from the Roys to Harris County.  Fuller, 407 S.W.2d at 218.

The other key question to resolving the landowners= prescriptive easement claims relates
to the nature of the railroad=s
right to use the right-of-way.  While
railroad rights-of-way are commonly referred to as easements, they do not have
the attributes of a typical easement. 
Generally, an easement is a nonpossessory interest that authorizes its
holder to use the property for only particular purposes.  See Marcus Cable Assocs., L.P. v. Krohn,
90 S.W.3d 697, 700 (Tex.
2002).  For example, a landowner may
continue to farm land that is subject to a nonpossessory easement for
electrical power lines or pipelines.  A
railroad right-of-way differs from a typical easement because the railroad has
a possessory interest in the right-of-way to the exclusion of others, including
the titleholder of the property.   As
noted by the court in Millmen Union v. Missouri-Kansas-Texas R. Co. of Texas,
253 S.W.2d 450, 454 (Tex. Civ. App.CWaco
1952, writ ref. n.r.e.), AA
railroad company has the exclusive use of the surface of the land on which its
right of way is located.@  Thus, a railroad=s
right-of-way is more similar to a fee interest than a typical easement.  The supreme court recognized this principle in
Thompson v. Janes, 251 S.W.2d 953, 956 (Tex. 1952), wherein it noted that a railroad
right-of-way deprives the landowner of any beneficial use of the land.








Since the railroad had the exclusive use of the
right-of-way, the State did not have a right of possession prior to
abandonment.  The State=s interest prior to abandonment was
akin to that of a remainderman to a life estate in that the State did not have
a right to possess the right-of-way during the period of its operation.  This court rejected the possibility of a
remainderman=s
interest being subject to adverse possession during the term of the life
tenancy in Hensley v. Conway, 29 S.W.2d 416, 417-18 (Tex. Civ. App.CEastland 1930, no writ).  We reasoned in Hensley that
limitations does not accrue against the remainderman=s
interest while the life tenant remains alive because the remainderman does not
have a possessory interest that would allow him to institute a trespass to try
title action seeking the ouster of the trespasser.  Id.  

Our reasoning in Hensley is applicable to
the facts in this appeal.  It would be
unreasonable for the State=s
right to possess the property in the future to be impaired by a prescriptive
easement based upon acts occurring while the State did not have a right to
possess the right-of-way.  To hold
otherwise would have required the State to institute an action to prevent the
landowners from crossing the right-of-way even though it was in the exclusive
possession of the railroad.  Accordingly,
while the landowners may have established a prescriptive easement against the
railroad=s right
to possess the right-of-way, their adverse use was ineffectual against the
State=s future
right to possess the property.  Any  prescriptive easement that the landowners
possessed against the railroad terminated when the railroad abandoned the
property in 1998.  Thus, the State=s dedication of the right-of-way to
public use in 1992 prevented the State=s
interest in the property from being impaired by a prescriptive easement after
the railroad abandoned the right-of-way. 


We sustain the State=s
seventh and eighth issues.  We do not
reach the State=s
remaining issues pertaining to the landowners=
claim of a prescriptive easement (Issues Nos. Nine, Ten, Eleven, Twelve,
Thirteen, and Fourteen) in light of our determination that the landowners= claim is barred by statute.  See 
Rule 47.1.  We also do not
consider the State=s
seventeenth issue concerning the trial court=s
rulings on the State=s
objections to the landowners=
summary judgment evidence because it is not necessary to the final disposition
of this appeal.  Id.

                                                             Motion
for Rehearing








At the end of their motion for rehearing, the
landowners asserted a claim that they have a right of access to the highway (
Old Katy Road
) as
abutting owners.  The landowners waived
this claim because they did not present it for consideration prior to the
motion for rehearing.[10]  Moreover, the same claim was made by the
landowners in Fuller and rejected by the court.  407 S.W.2d at 220-21. We likewise reject the claim
by the landowners in this case for the same reasons set forth in Fuller.

Additionally, the landowners have attempted to
re-characterize our decision regarding their prescriptive easement claim as a
tolling of limitations issue.  That is
incorrect.  As the State argued, the
adverse possession of the landowners prior to the abandonment by the railroad
of the right-of-way (if any) simply ran against the railroad=s possessory interest and not against
the State=s
pre-abandonment interest.  We do not
reach the State=s
arguments that the landowners failed to establish their claims of adverse
possession against the railroad.

                                                            This
Court=s
Judgment

We hold that the trial court did not have subject
matter jurisdiction because sovereign immunity barred the landowners= suit against the State.  Accordingly, we vacate the trial court=s judgment and dismiss the landowners= claims for want of jurisdiction.  Alternatively, in the event that jurisdiction
exists, the judgment of the trial court is reversed, and judgment is rendered
in favor of the State.

 

 

TERRY McCALL

JUSTICE

 

July 19, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]The parties acknowledge that the State owns Old Katy Road by
virtue of its status as a public highway.





[2]The condemnation judgment provided in pertinent part as
follows: AIt is further ordered adjudged and decreed that the
land and premises described in the plaintiff=s
petition herein be and the same is hereby condemned and adjudged to the
Missouri Kansas and Texas Railway Company of Texas for its use and benefit as a
right-of-way for its railway, and such right thereto is hereby vested in said
Company.@





[3]The portion of the railroad right-of-way lying south of
the landowners= tracts of property was included in a purchase by the
State of several miles of railroad right-of-way.  





[4]There is only one reference to Walne Street in the applicable deed
records.  The description of Walne Street in
this reference indicates that it runs between the landowners= two tracts of property.  However, this description does not indicate
that Walne Street
extends across the railroad right-of-way to Old Katy Road
.  The description of Walne Street contained within the deed
records is inconsistent with the actual course 
of the asphalt road which separates the landowners= two tracts. 
Photographs in the summary judgment record illustrate that the road
extends across the railroad right-of-way to Old Katy Road
.  





[5]The statement from IT-Davy that the landowners
rely upon is similar to the holding in Lain.  Lain turns on the parties named as
defendants.  349 S.W.2d at 582-83.  If the State is named as a party defendant to
a trespass to try title action, the court lacks subject matter jurisdiction to
adjudicate the claim against the State because of the State=s sovereign immunity. 
However, state officials named as defendants are not entitled to defeat
the court=s subject matter jurisdiction by asserting sovereign
immunity. 





[6]A tract of land burdened by an easement is known as the
servient estate, while the tract of land benefitted by the easement is referred
to as the dominant estate. Daniel v. Fox, 917 S.W.2d 106, 110 (Tex. App.CSan Antonio 1996, writ denied).  If the dominant estate is retained by the
grantor and the servient estate is conveyed, an implied easement is said to
have been Areserved.@ Id.





[7]The landowners do not base their claim of an easement
upon an established route in existence at the time the railroad right-of-way
was created. An easement of this type is typically referred to as an implied
easement.  See Daniel, 917 S.W.2d
at 110.   To establish an implied
easement, a plaintiff must establish that (1) there was a unity of ownership
between the dominant and servient estates and that the use was (2) apparent, (3)
in existence at the time of the grant, (4) permanent, (5) continuous, and (6)
reasonably necessary to the enjoyment of the premises granted.  Id.  Since the landowners are claiming an easement
by necessity, they are not required to show the existence of a route that was
apparent, continuous, and permanent at the time of the severance.  Id.
at 111.





[8]The 52.82-acre tract was located east of the 2.5-acre
tract along the northern line of the railroad right-of-way.  At the time of the right-of-way=s acquisition in 1893, these two tracts were separated
by a preexisting railroad right-of-way that intersected with the right-of-way
at issue in this appeal.





[9]The landowners characterize the State=s pre-abandonment interest as a Aspringing executory interest.@ 





[10]The landowners disavowed that they were presenting a
claim as Aabutting@ landowners at both the trial court level and on
appeal.