Fred J. Munder, J.
The plaintiffs are the owners of three lots designated as Lots Nos. 1, 2 and 3 in Block H as shown on a map *321 entitled “ Map of Bayside Park, Part 2, Section 2 and Part I, Section 3,” which map was filed on August 5, 1932 as Map No. 1094 in the Suffolk County Clerk’s office.
The defendants Joseph J. Giuffre and Mary C. Giuffre are the owners of lots numbered 4, 5 and 6 on the same map, their lots being to the south of and abutting plaintiffs’ lots.
The pleadings herein indicate that the defendants George Skidmore and Velma Skidmore are the owners of a plot of land described in the complaint as follows:
‘ ‘ all that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Village of Amityville, Town of Babylon, County of Suffolk and State of New York, designated as the head of Hoover Canal East of Lot I, Block I (eye) on a certain map entitled ‘ Map of Bayside Park, Part 2 Section 3 ’, filed in the Office of the Clerk of Suffolk County March 31, 1931 as map No. 711, being more particularly bounded and described as follows:
“ beginning at northwest corner of parcel to be described bounded westerly by lot 1 and northerly by Shore Boad, thence North 87° 51' 10" East along Shore Boad 68.91 feet; thence South 41° 20' West 57.42 feet; thence North 48° 40' West 50 feet to said lot 1; thence North 41° 20' East along lot 1 10 feet to Shore Boad and the point of beginning ’ ’.
The Skidmore parcel abuts the westerly line of the plaintiffs ’ three lots and also part of the westerly line of the Giuffre Lot No. 4.
As shown on the map the Skidmore parcel is located at the northerly end of a waterway known as Hoover Canal and the Giuffre lots (except that portion of Lot No. 4 that abuts the Skidmore parcel) form part of the easterly boundary of Hoover Canal.
The complaint states three causes of action. The first is stated to be against the defendants Skidmore and in it, after alleging the ownership by plaintiffs and the defendants Skidmore of their respective parcels and the contiguity of their parcels, alleges that prior to plaintiffs acquiring their property the Hoover Canal, by slow and imperceptible erosion, had gradually encroached on the uplands at its north, thus extending its shore line onto plaintiff’s property; that they and their predecessors in title had enjoyed, until May of 1960, access to and the use of Hoover Canal “ as a right of way and public highway in conjunction with other property owners in the area and the public in general ”. They allege further that in May, 1960 the defendants Skidmore barricaded and obstructed plaintiffs’ access to *322 Hoover Canal; that the Skidmore parcel is “subject to and subordinate to the access to and use of Hoover Canal in favor of the premises owned by these plaintiffs ”; that the owners of land abutting the canal have a common right to access and use thereof and the defendants Skidmore have obstructed such access and use by the plaintiffs.
The second cause of action alleges a conspiracy by all four defendants to deny such access to and use of the Hoover Canal to the plaintiffs.
The third cause of action is against the defendants Giuffre and is substantially the same as the first cause of action against the defendants Skidmore.
The demand for relief is first for a declaration that the “ plaintiffs are entitled to free and unobstructed access to and the use of Hoover Canal in common with other upland owners and the public in general ’ ’ and then for a direction to the defendants to remove the barriers and for a permanent injunction against such interference ‘ ‘ with the exercise of said rights by the plaintiffs ’ ’.
Although the complaint alleges that by the gradual erosion of the banks of the Hoover Canal the waters thereof lapped the land of plaintiffs and the case was tried on the theory that such an encroachment on plaintiffs’ land created riparian rights in them, the prayer for specific relief seeks only such rights as plaintiffs have in Hoover Canal ‘ ‘ in common with other upland owners and the public in general”. Plaintiffs also ask such other and further relief as may be just and proper. This prayer for general relief invokes the equity powers of the court in the broadest terms. (Weil v. Atlantic Beach Holding Corp., 1 N Y 2d 20.)
Originally all the land comprising Bayside Park at Amityville consisted of a peninsula between the Narraskatuck Biver or Creek (sometimes called Clock Creek) on the west and Amityville Creek on the east and extending southerly into Great South Bay. The land was principally marshland and meadowland. No canal existed before 1930 and no streams ran through the land. About in 1932 the canals were dredged and sand was thrown up on the sides to make the land available for development. Thus the canal was not a natural watercourse. “ A watercourse consists of bed, banks and water. Angelí Watercourses, sec. 4; Gould on Waters, sec. 41. A natural watercourse has such characteristics while in a state of nature and without artificial construction. Natural watercourses are such as rivers, creeks and branches. A canal can never come under such a designation, unless it is a *323 mere enlargement of a natural watercourse ”. (Porter v. Armstrong, 129 N. C. 101, 106.)
In its original state, there was no navigable water within the bounds of Bayside Park. That occasionally a high tide might cover portions of the area with water did not make such water navigable in fact. ‘ ‘ [A]waterway is navigable in fact only when it is used, or susceptible of being used, in its natural and ordinary condition, as a highway for commerce over which trade and travel are or may be conducted in the customary inodes of trade and travel on water ” (Brennan, J., in Fairchild v. Kraemer, 11 A D 2d 232, 235).
The canal having been artificially created out of private lands, over which no navigable waters theretofore ran, the canal and its bed remain private property and the waters thereof are not subject to any public right or public easement thereon. (Fairchild v. Kraemer, supra.)
The conveyances to plaintiffs and their predecessors described the property conveyed by lot numbers on a filed map. No other description, either as to metes and bounds or frontage on roads or the Hoover Canal, was given. This is also true with respect to the conveyance to the defendants Griuffre. The filed map shows plaintiffs ’ land to be bounded on the north by Shore Boad, on the east by Braham Avenue, on the south by lot numbered 4, owned by the defendants Griuffre, and on the west by the parcel, unnumbered, owned by the defendants Skidmore. The map shows the lots owned by Griuffre to be bounded on the north by the plaintiffs’ lot numbered 3, on the east by Braham Avenue, on the south by lot numbered 7, and on the west for 10.64 feet by the Skidmore parcel and for 49.36 feet by the Hoover Canal.
The parcel to which the defendants Skidmore claim title is a trapezium with 68.91 feet on its northerly boundary, which is an extension of the southerly line of Shore Boad, 57.42 feet on its easterly boundary (46.78 feet along the westerly boundary of plaintiffs’ land and 10.64 feet along the westerly boundary of the Griuffre land), 50 feet on its southerly boundary which is the northerly end of Hoover Canal as shown on the map, and 10 feet on its westerly boundary along the easterly boundary of Lot No. 1 in Block I on Map of Bayside Park, Part 2, Section 3, filed on March 31,1931 as Map No. 711.
This parcel is shown on the map as a notch in the southerly side of Shore Boad. It bears no lot number and no line separates this parcel from the road. This same condition appears at the northerly ends of all canals, but one, shown on the filed maps and the section maps and parts thereof so filed.
*324 The area, as reduced from plaintiffs’ Exhibit No. 3 and defendants ’ Exhibit No. A, is shown as follows:

The title to the parcel at the head of the canal appears never to have been conveyed out to anyone (except to the successor corporate developer) by the developers of the land. The defendants Skidmore, who own other land on the northerly *325 side of Shore Road about opposite the end of Hoover Canal, acquired it from one who purchased it from the County Treasurer after it was sold for nonpayment of taxes. His tax deed had a recital that it conveyed 8 8 the title and interest therein of Unknown Owner to whom said premises appear heretofore to have belonged (and of all other persons)”. There was no attempt made on the trial to explain why the plot had been assessed to an unknown owner.
A somewhat analogous situation was presented in Dalton v. Levy (258 N. Y. 161). There the common owners in subdividing land left a rectangular open area 32 feet wide and 50 feet long set in among three lots with no designation on the map of its purpose and no lot number assigned to it. In the deed conveying two of the abutting lots the developer described them as bounded on Jacobs Lane, which referred to the unnumbered plot. Later the owner of the third abutting lot acquired title to the unnumbered plot and built a garage thereon occupying about 21 feet of the plot’s width. The court held (pp. 166-167): 86 That the plaintiff gained no easement thereover, for its unrestricted use to its full width, as if it were a public street, through the fortuitous circumstance that the brothers Jacobs, in conveying the several lots to her predecessor in title, employed the southerly and westerly sides of the lot termed 8 Jacobs Lane ’ as monuments to bound the property conveyed.
88 At most therefore the plaintiff has a right of 8 egress and ingress ’ over the lot, as conveyed to her by Dene, her predecessor. A right of way may be general in its character, that is, usable for all purposes;8 or it may be a limited right, as a right of way for carriages but not for carts, or for horses and not for carriages; or it may simply be a footway.’ (Goddard on Law of Easements, p. 406.) Where a right of way is reserved or granted, but not specifically defined, the rule is 8 that the way need be only such as is reasonably necessary and convenient for the purpose for which it was created. ’ All that is required of a defendant, the owner of the servient tenement, is 8 that he shall not so contract the alley-way, either vertically or laterally, as to deprive the plaintiff of a reasonable and convenient use of the right of passing to and fro.’ (Per Vann, J., in Grafton v. Moir, 130 N. Y. 465, 471.)”
In our case, however, we have similar open areas at ends of all canals but one. That one is the canal to the north of Block K, the easterly end of which canal is enclosed by the boundary lines of Lot No. 1 in Block K. That canal appears also to be at the northerly extremity of the entire development. There is no evidence that any open area at the end of any of the other canals *326 shown on any of the filed maps was ever conveyed out by the developer. These circumstances, it seems to me, indicate the developer’s intention that such open areas were to afford access to the canals to the owners of lots in the development not abutting the canals just as they might have access to the streets by the implied easement that flows from the filing of a subdivision map. (Dalton v. Levy, supra, and cases there cited; see, also, the editorial analysis and summary in Ann. 7 A. L. R. 2d 610, 613, 639, 643.) Here it is unnecessary to make that determination. It suffices to determine that, at the least, the plaintiffs owning lots abutting the open space at the end of Hoover Canal are entitled to the enjoyment of an easement over that open space for ingress and egress both to Shore Boad and to the canal.
The tax title that the defendants Skidmore acquired did not operate to relieve the property of the burden of the easement. (Wilkinson v. Nassau Shores, Inc., 1 Misc 2d 917, affd. 278 App. Div. 970, mod. 304 N. Y. 614.)
The plaintiffs’ case against the defendants Griuffre involves other legal concepts. The deed of the common owner to their grantors conveyed the land by the lot numbers as shown on the map. No reference was made in the deed to the canal. In the deed to these defendants their grantors conveyed by the same description the same premises which were conveyed to them except that they, unnecessarily, added the words ‘ ‘ and together with riparian rights, if any, in and to said premises ”. The clause gave them nothing that was not theirs without it.
The deed to their grantors conveying lots bounded by the canal conveyed not only the right to use the canal but also the title to the center line of the canal, an artificial waterway, where it abutted their land. “ The owners of land lying on an artificial watercourse, such as a canal, ditch, or mill race, will usually take to the center line thereof, in the absence of a clear showing of intent to the contrary in the grant or conveyance from which such owners derive their title. However, the presumption that the owner takes to the center is not one of law, and may be rebutted (93 C. J. S., Waters, p. 842.) In Warren v. City of Gloversville (81 App. Div. 291, 293), Mr. Justice Chase said: ‘ ‘ The rule in regard to lands bounded on a non-navigable stream applies also to lands bounded upon artificial water courses, as a canal, ditch or such like. In either case the presumption is that the adjoining landowner has title to the center of the stream, but this presumption may be rebutted by evidence. (4 Am. & Eng. Ency. of Law [2d ed.], 832; 5 Cyc. 900.) ”
No such rebuttal evidence was adduced in our case. The chain of title, for plaintiffs and for the defendants Griuffre, as shown *327 by deeds in evidence, disclosed that the original developer was a corporation called Shell Road-Ave. Y Developers, Inc. Several section maps and maps of parts of sections of an integrated subdivision plan of the whole development area were filed. On May 18,1931, this corporation by its president, one Emil Berger, conveyed to Bayside Park of Amityville, L. I. Inc., by a metes and bounds description all land described (except certain lots identified by block and lot number and section map number) and all right and title to 1 ‘ the land lying in the streets, roads, highways and canals ”. Then on March 20, 1939, Bayside Park of Amityville, L. I. Inc., by its secretary, one Rose Berger, conveyed to Rose Berger, individually, certain lots simply by reference to lot and block and map numbers. Rose Berger was the common grantor to the predecessors of both plaintiffs and defendants Giuffre and in each case the respective parcels were described solely by block, lot and map numbers.
The conveyance to Rose Berger and the mesne conveyances to the subsequent grantees including the plaintiffs and defendants Giuffre having been by reference to a map, without delimitation or express reservation, conveyed the fee to the center of the streets on which the lots abut subject to the rights of other lot owners and their invitees to use the entire area of the streets for highway purposes. (Fiebelkorn v. Rogacki, 280 App. Div. 20, affd. 305 N. Y. 725; Lowe v. Di Filippo, 12 A D 2d 788.)
The situation as to the plaintiffs differs from that affecting the defendants Giuffre in that the plaintiffs have only street frontage whereas the defendants Giuffre own to the middle of the canal where it is shown on the map to abut their land. The rule as to nonnavigable waters, and an artificial waterway such as a canal is so considered, is similar to that relating to abutting streets. A presumption of law gives the abutting owner title to the middle of the artificial waterway where no contrary intention is expressed or can be gleaned from the language used in the deed to describe the property conveyed.
From the photographs and maps offered in evidence it appears that when the canal was created it was not bulkheaded or otherwise contained within its original boundaries. Some owners of land abutting the canal did bulkhead and fill in their land. Others, including the defendants Giuffre, did not. Because the Giuffre land and the Skidmore land was not bulkheaded or filled, the water eroded the original bank and gradually encroached on the plaintiffs’ land. Because of this gradual encroachment plaintiffs claim a riparian right to access to the canal over the land of the defendants Giuffre. But here we have no navigable water nor even a natural watercourse or stream which may *328 change its course. This is an artificial waterway dredged and created within definite bounds. The rule of accretion and erosion was clearly stated by Werner, J., in Matter of City of Buffalo (206 N. Y. 319, 325): “ When land bordering a body of water is increased by accretion, that is to say, by such a slow and gradual deposit of particles that its progress cannot be always measured even though its results may be discerned from time to time, the new land thus formed belongs to the owner of the upland to which it attaches. By the same reason the rule is that when the sea, lake, or navigable stream gradually and imperceptibly encroaches upon the land, the loss falls upon the owner, and the land thus lost by erosion returns to the ownership of the state
There never was ownership by the State in the bed of Hoover Canal. Such part of the lots owned by the defendants Giuffre which is now under water because of their failure to erect a bulkhead still belongs to them. They may reclaim that land. In that part of the bed of Hoover Canal in front of their lots to which they have title, they may not erect any barriers or structures that might interfere with the enjoyment of the use of the canal by others entitled thereto. The plaintiffs have no right to cross over the Giuffre land so submerged and have no just complaint concerning the placing of stakes or pikes on the lot line. The plaintiffs have acquired no riparian rights such as would prevent the defendants Giuffre from bulkheading and filling in their lots to their original lines. Hiparían rights relate to rights in navigable waters. “ The plaintiffs have riparian rights, which means that they have access to navigable water in front of their property ”. (Crane, Ch. J., in Gucker v. Town of Huntington, 268 N. Y. 43, 47.)
In the proofs adduced on the trial no date was fixed when the water first encroached on plaintiffs ’ land. An overlay chart received in evidence shows that in 1947 it had not reached plaintiffs’ land but by April, 1954 it had covered 9 feet of the southerly line and 12.78 feet of the westerly line. It is therefore obvious that plaintiffs have gained no right by prescription. (Civ. Prac. Act, § 34.)
It follows then that, within the equity powers invoked by plaintiffs, the court may and it does find that the plaintiffs are entitled to access to Hoover Canal, not directly from their land, but by reason of the implied easement they have in it over the land at the head of Hoover Canal now owned, by virtue of a tax title, by the defendants Skidmore. They are entitled to an injunction against the defendants Skidmore restraining any *329 further interference by them of reasonable access by the plaintiffs to Hoover Canal.
I find no illegal conspiracy by these four defendants against plaintiffs and therefore dismiss the second cause of action.
The defendants Griuffre are entitled to judgment dismissing the complaint as to them. Submit judgment, without costs to any party, on notice.