In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00191-CV

_____

**RED BOOT PRODUCTION COMPANY, INC., BARBARA LANDRUM, WIDOW OF CLAUDE JOHN LANDRUM, ERIC LANDRUM, MATTHEW WAYNE LANDRUM, SCOTT MICHAEL LANDRUM, DAWN EWING MILLS, TAMARA EWING, SEAN EWING, LAURA EWING, J. PATRICK MORRIS SR., JOSEPH J. MORRIS, THOMAS A. MORRIS, WILLIAM D. MORRIS, MICHAEL M. MORRIS, KATHLEEN MORRIS REINE AND ROBERT J. J. MORRIS, INDIVIDUALLY AND AS TRUSTEE FOR TROY EWING, Appellants**

**V.**

**SAMSON EXPLORATION, LLC AND SM ENERGY COMPANY F/K/A ST. MARY LAND & EXPLORATION COMPANY, ANN HARDER, PAULINE HARDER AS EXECUTRIX OF THE ESTATE OF RAY EDWARD HARDER JR., AND EDRA HARDER BOGUCKI, Appellees**

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-190,319**

**MEMORANDUM OPINION**

In this trespass to try title appeal that concerns oil and gas interests, the

parties to the appeal dispute whether the trial court properly granted summary

1

judgment quieting title to a strip of land in use as an irrigation canal. Based on the summary judgment evidence, the trial court determined that a 1908 deed and a 1916 deed conveyed the grantor's interest in the two tracts to the centerline of a canal that runs between the tracts. We hold that the summary judgment evidence was conclusive, and that the two deeds at issue indicate the grantor intended to convey his interest in the tracts that he sold to the centerline of the canal. Therefore, the trial court properly granted summary judgment in favor of the parties who acquired their minerals based on the grants in the 1908 and 1916 deeds, and we affirm the trial court's judgment, which found against the parties claiming the 1908 and 1916 deeds did not include the right to explore and produce the minerals lying beneath the canal.

## Background

This dispute concerns whether the deeds executed by a grantor that sold the tracts on both sides of a canal owned and intended to convey his fee simple interest in the property lying beneath the canal. The dispute over the ownership of the property arose after an oil and gas exploration company completed two successful gas wells that produce minerals in a location that lies beneath the canal.

In 2004, the Broussards[1] and the Harders[2] entered into an agreement with Samson Lone Star, LLC (now known as Samson Exploration, LLC, "Samson") and St. Mary Land and Exploration Company (now known as SM Energy Company, "SM Energy") to pool various mineral leases in which they owned interests to allow Samson and SM Energy to form the Paggi-Broussard Unit. Currently, Samson operates the Unit, which covers approximately 640 acres of land out of the James Gerish Jr. Survey in Jefferson County, Texas. Two producing gas wells are located within the boundaries of the Paggi-Broussard Unit.

A 200-foot-wide, 38-acre canal, which is currently operated by the Lower Neches Valley Authority (LNVA), runs across the surface of the tracts that form the Unit. The canal was constructed over a century ago after August Delaune, in

---

[1] The Broussards are Louis M. Broussard, William Arthur Roane and William Arthur Roane Jr., Trustees of the William Arthur Roane Land Trust, Joe Broussard II and Martin Eloi Broussard, Trustees of the Loretta B. Casey Mineral Trust, James C. Broussard, Louis M. Broussard Jr. and Roland Polk, Agents and Attorneys-in-Fact for the J. E. Broussard Heirs Mineral Agency agreement, and Mixson Land Company. The Broussards were nonsuited after the trial court granted the motion for summary judgment, and they have not participated in the appeal.

[2] The Harders are Ann Harder, Pauline Harder as Executrix of the Estate of Ray Edward Harder Jr. and Edra Harder Bogucki. The Harders, Samson, and SM Energy were some of the defendants who were parties when the trial court rendered the take-nothing judgment, and they have submitted briefs in the appeal.

1898, granted the Beaumont Irrigating Company a private easement to build a canal.

In 1908, Delaune executed the first of the deeds that is at issue in the appeal. In the deed, Delaune conveyed the tract that lies on the south side of the canal; the parties dispute whether the 1908 deed included Delaune's interest in the strip that lies between the southern edge of the canal and the center of the canal. The problem regarding whether the grantor intended to include the strip between the south border of the canal and the center relates to the 1908 deed's metes and bounds description, which generally calls for borders that run along the "south edge of the Beaumont Irrigating Company's Canal." However, the 1908 deed indicates that Delaune intended to convey the entire tract, as "more particularly described" by the metes and bounds description that followed the general language conveying all of Delaune's interest in the tract. Additionally, the deed does not contain any express reservation of Delaune's interest in the strip of property that lies within the Canal Tract, and he did not reserve any interest in the minerals in the tract that lies to the south of the canal. The Broussards, the current property owners, trace their mineral interest to Delaune's 1908 deed.

In 1916, Delaune executed the second deed that is at issue in this appeal. In it, Delaune conveyed a 480 acre tract that lies on the north side of the canal. With

4

respect to the property conveyed, the 1916 deed's metes and bounds description, describes the boundary of the property as being in a corner "in the north line of the right of way of the Beaumont Irrigating Company canal; thence in an easterly direction following the north boundary line of the right of way[.]" The 1916 deed contains no express reservation of title to the strip of property lying beneath the canal, nor did Delaune reserve any of the minerals in the tract lying on the north side of the canal. The Harders, the current property owners, trace their ownership rights to the mineral estate to Delaune's 1916 deed.

In 2009, Delaune's descendants[3] leased the minerals that are at issue in this appeal to Red Boot Production Company, Inc. According to Red Boot, the metes and bounds descriptions in the two deeds indicate that Delaune never intended to convey the two strips lying beneath the canal, the Canal Tract, based on the language in the 1908 and 1916 deeds. In 2011, Red Boot sued Samson, SM Energy, the Broussards, and the Harders, and claimed that it had acquired a valid

---

[3] The descendants of Delaune who were parties in the trial court and to the appeal consists of the following people: Barbara Landrum, Widow of Claude John Landrum, Eric Landrum, Matthew Wayne Landrum, Scott Michael Landrum, Dawn Ewing Mills, Tamara Ewing, Sean Ewing, Laura Ewing, J. Patrick Morris Sr., Joseph J. Morris, Thomas A. Morris, William D. Morris, Michael M. Morris, Kathleen Morris Reine and Robert J. J. Morris, individually and as Trustee for Troy Ewing. These parties filed a brief, which Red Boot, in addition to filing its own brief, joined.

oil and gas lease to the minerals beneath the Canal Tract. After some of the defendants filed a motion to join additional parties, Delaune's descendants joined the suit as intervenors. In their petition in intervention, Delaune's descendants alleged that they were the rightful owners of the Canal Tract, a strip of property that consists of approximately 38 acres that lies between the two tracts that Delaune sold in 1908 and 1916.

In 2013, Samson filed a combined traditional and no-evidence motion for summary judgment on Red Boot's and Delaune's descendant's claims, which asserted that they were the rightful owners of the minerals under the Canal Tract. Subsequently, the Harders and the Broussards joined Samson's motion. In the traditional part of its motion, Samson argued that Delaune's 1908 and 1916 deeds included the Canal Tract. Although Red Boot and Delaune's descendants filed separate responses to the combined motion, all of them asserted that Delaune did not convey the Canal Tract to the grantees that purchased property through the 1908 and 1916 deeds.

Standard of Review

In resolving the motions for summary judgment, the trial court was required to construe the language of each deed to determine if Delaune intended the respective grants to include the property lying beneath the canal to the canal's

6

center. The trial court granted the defendants' traditional motion for summary judgment, and it granted their respective no-evidence motions. However, the trial court did not make written findings or file conclusions to explain its rulings.

On appeal, a de novo standard is used in reviewing a trial court's summary judgment ruling. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). With respect to their traditional motions for summary judgment, the defendants were required to demonstrate that no genuine issues of material fact existed that required a trial, and they were required to show that under the language of the deeds at issue, they were entitled to obtain a judgment in their favor as a matter of law. Tex. R. Civ. P. 166a(c); *see also Knott*, 128 S.W.3d at 216. On appeal, we review the trial court's ruling that the summary judgment evidence did not raise any issues of fact "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

The standards under Rule 166a of the Texas Rules of Civil Procedure apply to the trial court's resolution of the no-evidence portion of the defendants' motion. *See* Tex. R. Civ. P. 166a(i). To prevail on a no-evidence motion, the party moving for judgment must establish that there is no evidence of one or more essential elements of the adverse party's cause of action or affirmative defense. *Id*; *Fort*

7

*Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). To defeat the motion, the party opposing a no-evidence motion must present evidence that raises a genuine issue of material fact as to each of the elements of the claims that have been challenged by the moving party's no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

A no-evidence motion may be granted only when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L. Rev. 361, 362-63 (1960)). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983); *see also Ridgway*, 135 S.W.3d at 601. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994) (citing

8

William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Texas L. Rev. 515, 522, 523 (1991)).

Summary Judgment Evidence

The summary judgment evidence includes abstracts of title, and the abstracts demonstrate that all of the parties to the suit trace their claims to a common grantor, August Delaune. Part of Red Boot's argument concerns Delaune's authority to convey title to the entirety of the two tracts at issue based on the interest his children had in the two tracts at issue. The summary judgment evidence includes Delaune's affidavit, dated and recorded by Delaune in 1923. According to Delaune's affidavit, he married Azima Delaune in 1884, and she died in 1894, leaving two children, Bertha Delaune Maley and Irving A. Delaune.

Approximately four years after Azima's death, Delaune granted to the Beaumont Irrigating Company an easement that gave it "the right to build, maintain and operate in and upon any lands a canal through which to convey water[.]" The easement includes a provision that required the Beaumont Irrigating Company, upon Delaune's demand, to "construct and maintain" a bridge over the right of way and to "construct and maintain" any "drain flumes and culverts" to drain and irrigate the land he owned that is the same land relevant to the parties' current dispute. The easement further provides that Delaune, and

9

his heirs and assigns shall have the right to fence across said canal at any place in such manner as not to obstruct the flow of water therein. It is further agreed and understood that [Delaune and] his heirs and assigns shall have the free and unrestricted right and privilege to dam and back water through and under said canal to and upon his lands North and above said canal and against the embankment of said canal and maintain such water for irrigating purposes and that said Company its successors and assigns shall construct and maintain the necessary flumes or drain pipes for so doing at its cost and expense under said canal upon said lands.

A reversion clause in the easement provides that if the canal was "abandoned or changed upon said land[,]" that the right of way "shall revert to and again become the property of the said A. Delaune his heirs or assigns."

In 1908, Delaune sold a 1101.74 acre tract that is located just south of the canal to A. Bernard (the "Bernard Tract"). The metes and bounds description for the Bernard Tract states that the northern border runs "along the south edge of the Beaumont Irrigating Company's Canal." The Broussards that are parties to the suit are the heirs and assigns of the Bernard tract.

In 1915, Delaune conveyed 3.69 acres adjacent to the Bernard Tract to J.E. Broussard (the "Broussard Tract").[4] The metes and bounds description in the 1915 deed recites that the northern border of the tract runs "west along Delaune's south line 1229 feet to a stake in the south right a way line of the Beaumont Irrigating Company Canal; thence along the said south right a way line[.]"

---

[4] The 3.69 acre tract is not one of the tracts that is at issue in the appeal.

In 1916, Delaune sold a 480 acre tract that is located just north of the canal to Ed Paggi (the "Paggi Tract"). The 1916 deed describes the southern border as "following the north boundary line of the right of way of said Beaumont Irrigating Company . . . ." The Harder co-defendants are the heirs or assigns of Ed Paggi.

The parties dispute whether the grants in the 1908 and 1916 deeds include the property that lies beneath the canal separating the Bernard and Paggi tracts. The canal still exists, and is operated by the LNVA. Red Boot and Delaune's descendants contend that Delaune never transferred title to the land burdened by the canal easement based on the metes and bounds description in each of the respective deeds. They also argue that Delaune could not have conveyed the interest that his children inherited from their mother in the tracts.

Samson, SM Energy, and the Harders contend that when a grantor conveys land bounded by an easement, the grant generally extends to the center of the easement that is referenced in the metes and bounds description of the deed absent a specific reservation otherwise. They also contend that Delaune's children ratified his 1908 and 1916 deeds.

11

Construing the Deeds

None of the parties contend that either deed is ambiguous, so the deeds are construed as a matter of law. *Stribling v. Millican DPC Partners, LP*, 458 S.W.3d 17, 20 (Tex. 2015). In this case, the question is whether the trial court properly concluded that the language in the two deeds established that Delaune intended to convey title to the property that lies beneath the Canal Tract. Relying primarily on the metes and bounds descriptions in the two deeds, Red Boot claims that Delaune never intended to sell the Canal Tract when he sold the tracts to the north and south of the canal. It concludes that Delaune's descendants acquired title to the Canal Tract, and its mineral lease with them is valid. In contrast, Samson, SM Energy, and the Harders contend that the rules of construction as applied to the two deeds leads to the conclusion that Delaune sold the entirety of his interest in the two tracts at issue, including the Canal Tract, which properties were ultimately acquired by the Broussards and the Harders.

When construing an unambiguous deed, the grantor's intent regarding the conveyance is derived from the language that is found within the four corners of the deed. *Luckel v. White*, 819 S.W.2d 459, 461-62 (Tex. 1991). When possible, a court is to harmonize and give effect to all parts of a written instrument, but when there is conflict in a deed's various provisions, the more specific provisions in the

12

deed generally control over more general expressions that apply to the same land. *Stribling*, 458 S.W.3d at 20. This rule of construction is "but a means of discerning the parties' true intent." *Id*.

Another rule of construction provides that a warranty deed, generally, is considered to have transferred the grantor's entire estate in the property that is being sold "unless there are reservations or exceptions which reduce the estate conveyed." *Cockrell v. Texas Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956). Samson, SM Energy, and the Harders rely on this rule of construction, and they point out that the two deeds do not include provisions stating Delaune expressly intended to reserve title to the strips of property lying beneath the Beaumont Irrigating Company's easement. Nevertheless, in deciding what property Delaune intended to convey through his deeds, we are to gather his intention from each deed as a whole, "without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules." *Sun Oil Co. v. Burns*, 84 S.W.2d 442, 444 (Tex. 1935). A court's purpose in construing a deed is to arrive at and effectuate the grantor's true intent, and the purpose is not to enforce arbitrary rules of construction that are based solely on considerations of public policy. *See Rio Bravo Oil Co. v. Weed*, 50 S.W.2d 1080, 1085 (Tex. 1932).

In this case, the metes and bounds description of the deeds created a 38-acre strip of property that lies beneath an existing irrigation canal. A specific rule of construction, the strip and gore doctrine, applies when the tract of property in dispute consists of a tract of property between two other tracts, each of which the grantor conveyed. The strip and gore doctrine developed in response to a "fruitful source of litigation" that concerns claims of separate ownership to long narrow strips of land. *Cantley v. Gulf Prod. Co.*, 143 S.W.2d 912, 915 (Tex. 1940).

> Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip.

*Id.* "The strip and gore doctrine can have application only when the specific strip is not included in the field notes of the conveyance. If it were so included, it would pass under the conveyance." *Strayhorn v. Jones*, 300 S.W.2d 623, 638 (Tex. 1957). The doctrine "was conceived and intended to apply to relatively narrow strips of land, small in size and value in comparison to the adjoining tract conveyed by the grantor." *Angelo v. Biscamp*, 441 S.W.2d 524, 526-27 (Tex. 1969). "[W]hen it is apparent that the narrow strip has ceased to be of benefit or importance to the grantor of the larger tract, it can be presumed that the grantor intended to convey such a strip." *Id.* at 527.

14

In the traditional portion of their joint motion for summary judgment, Samson, SM Energy, and the Harders relied, in part, on the strip and gore doctrine to argue that they were entitled to summary judgment on the claims of Red Boot and of Delaune's descendants. Red Boot and Delaune's descendants contend that the strip and gore doctrine does not apply to the Canal Tract. According to Red Boot, by calling for a border on the edge of the Canal Tract in the Paggi deed, Delaune expressed his intent to retain the strip that lies beneath the canal, which it argues renders the strip and gore doctrine inapplicable. Additionally, Red Boot argues that even if the doctrine applies, an issue of material fact exists regarding whether the 200-foot-wide, 38-acre tract that comprises the Canal Tract is small in size and value as compared to the Bernard and Paggi Tracts. In their brief, Delaune's descendants argue the Canal tract is not small, given that Delaune owned or conveyed other even smaller tracts located in the same survey.

In our opinion, the strip and gore doctrine is relevant to resolving the questions surrounding whether Delaune intended to convey the property lying beneath the canal. With respect to the comparative size of the Canal Tract to the other two tracts, the summary judgment evidence reflects that Delaune owned approximately 1600 acres in the James Gerish Jr. Survey before he sold the two tracts at issue, and that he conveyed his ownership in the property he owned in the

15

survey through a series of transactions in a period of less than ten years. The Bernard Tract, one of the tracts relevant to the question of whether the strip and gore doctrine applies, contained 1100 acres. The Paggi Tract, the other tract relevant to the doctrine under the facts in this case, contained 480 acres. Even if Delaune's conveyances of other properties within the same survey were relevant to whether the strip and gore doctrine applies, a tract of land that is 200-feet wide, contains 38 acres, and is burdened by an easement is small in comparison to 1580 acres of land. We conclude the evidence conclusively proves that the Canal Tract is small and narrow when compared to the Bernard and Paggi Tracts. *See Escondido Servs., LLC v. VKM Holdings, LP*, 321 S.W.3d 102, 109 (Tex. App.— Eastland 2010, no pet.).

Red Boot also argues the strip and gore doctrine does not apply because Delaune sold the Bernard and Paggi tracts at different times. However, in *Cox v. Campbell*, 143 S.W.2d 361, 365-66 (Tex. 1940), the Texas Supreme Court presumed the grantor intended to convey property to the centerline of an easement where the grantor conveyed the property on each side of an easement in separate transactions, several years apart. We are not persuaded that the applicability of the strip and gore doctrine requires the sales creating the strip to occur around the same time.

16

In another argument, Red Boot contends that because Delaune described another canal that crossed the Paggi tract in his 1916 deed differently, the 1916 deed reflects that Delaune did not intend to convey title to the property beneath the Canal Tract. In the deed to the Paggi Tract, Delaune specifically excepted from the conveyance "whatever rights or titles I have conveyed to the Neches Canal Company[,]" which is the other canal easement that Delaune granted before he sold the Paggi Tract. Additionally, the deed to the Paggi Tract states that the conveyance includes all land described in a partition suit that the deed specifically identifies, which consists of land "situated north of the Beaumont Irrigating Company canal, excepting, however, the V. Collier 50 acre tract and the right of way of the Neches Canal Company and to any right of way for a public road."

We note that the calls for borders in the Paggi deed follow the edges of public roads, and do not describe the border at the centerlines of the easements for the roads. The deed carves a tract previously conveyed to V. Collier out of the northwest corner by calling for a border on the north line of the Neches Canal Company right of way line, turns for a corner, and then proceeds south across the canal to a point in the north line of the Beaumont Irrigating Company right of way. Delaune called for borders on the edges of the roads and canals described in the deed, but enclosed the Neches Canal Company right of way in the Paggi Tract.

17

Red Boot argues that Delaune would have enclosed the Canal Tract in the description if he had intended to convey it. But, Delaune's deed conveyed the fee to the canals and the roads because he expressly excepted the right of way, not his interest in the fee. *See Haines v. McLean*, 276 S.W.2d 777, 782 (Tex. 1955); *Lewis v. East Texas Fin. Co.*, 146 S.W.2d 977, 980 (Tex. 1941) ("An instrument of conveyance which conveys land definitely described in such instrument, and then excepts from such conveyance a road, railroad right of way, canal right of way, etc., as such, occupying a mere easement on, over, or across the land conveyed, conveys the fee to the entire tract, and the exception only operates to render the conveyance or grant subject to the easement.").

Red Boot and Delaune's descendants raise several additional arguments in an effort to create doubt about whether Delaune intended to convey his title to the land that lies beneath the Canal Tract. According to Red Boot, Samson's summary judgment evidence fails to conclusively establish that the Canal Tract ceased to be of any benefit or importance to Delaune. *See Angelo*, 441 S.W.2d at 526-27. In support of this argument, Red Boot points to the reversion provision of the deed, concluding that the Canal Tract had value to Delaune because the strip included the mineral estate, which is the dominant estate. Also, Delaune's descendants point to

18

evidence that, at the time Delaune conveyed the tracts, the property was close to highly productive oil fields.

We are not persuaded by these arguments that the 38-acre strip was valuable to Delaune. Clearly, the two tracts were principally used to farm rice. With respect to Delaune's possible interest in the minerals, the summary judgment evidence includes a 1901 agreement between Delaune and others to produce oil on 580 acres of land, including the Canal Tract, in return for an ownership interest in an oil company. Nonetheless, Delaune subsequently conveyed both the Bernard and Paggi Tracts without reserving any portion of the mineral estate on either of those large tracts. The reversion clause in the canal easement gave Delaune the right to use the surface, and the existence of the easement would not have prevented him from producing the minerals from the land beneath the Beaumont Irrigating Company's canal had Delaune desired to do so. We hold that the summary judgment evidence does not raise an issue of material fact regarding whether the Canal Tract was highly valued by Delaune for its minerals. *See Escondido Servs.*, 321 S.W.3d at 109.

Samson also argues that the trial court correctly followed a rule of construction that indicates courts should presume that a grantor, when the deed describes property along the edge of a road, intended the deed to include any

property the grantor owned to the center of the roadway easement. The Texas Supreme Court explained the presumption to the centerline rule in *Mitchell v. Bass*, 26 Tex. 372, 380 (1862).

> [A] conveyance of land bounded on a public highway carries with it the fee to the center of the road as part and parcel of the grant. Such is the legal construction of the grant unless the inference that it was so intended is rebutted by the express terms of the grant. The owners of the land on each side go to the center of the road, and they have the exclusive right to the soil, subject to the right of passage in the public. Upon the discontinuance of the highway the soil and freehold revert to the owner of the land.

*Id.*

Texas courts have applied the centerline presumption to easements other than those used for public highways. In *Texas Bitulithic Co. v. Warwick*, the metes and bounds description ran along the street, but the court held that "title extends to the center of the street unless the *express* terms of the grant show a contrary intention." 293 S.W. 160, 162 (Tex. Comm. App. 1927, judgm't adopted).

> As a rule, deeds do not describe property beyond the bounds where the grantee has *exclusive rights*. For that reason, no mention is generally made of adjoining sidewalks and streets, where the public generally has concurrent rights and control. The use of adjoining sidewalks and streets is so essentially connected with the lot itself that grantors have deemed it unnecessary, as a rule, to mention them as being included within the terms of the deed.

*Id.* at 164.

In *Weed*, 50 S.W.2d at 1084, the Texas Supreme Court applied the presumption to the centerline rule to a railroad easement. In that case, the Court stated that "a legal presumption exists that a person conveying land situated upon a public highway or stream intends to convey to the center line thereof, in the absence of an expression of a clear and unequivocal intention to the contrary." *Id.* The Court, in *Weed*, noted that a person owning land abutting a railroad right of way enjoys important rights, including the right to have a railroad crossing, culverts and sluices installed, while the strip has little practical value to the grantor. *Id.* at 1084-1086. In *Weed*, the Court then explained:

> The use of this presumption is merely the application in a different form of the familiar rule of construction which has always been enforced by the courts, that is, to indulge the presumption that a grantor intends to convey to his grantee all of the appurtenant rights incident to the beneficial enjoyment of property which he has conveyed. In other words, when a person conveys a piece of property abutting upon a public highway or nonnavigable stream it is but natural to assume, in the absence of an express reservation to the contrary, that he intends to convey the same with all of the beneficial rights enjoyed by him in its use.

*Id.* at 1084.

In *Cox*, 143 S.W.2d at 366, the Texas Supreme Court applied the presumption to the centerline rule in a trespass to try title action. *Id*. The dispute in *Cox* concerned a railroad easement, on which there was a producing well. The facts in *Cox* showed that in 1898 and 1904, the grantor, Campbell, executed deeds that

21

conveyed the property on each side of a railroad easement. The deeds did not describe the property being conveyed as consisting of the property to the center of the railroad easement. Instead, the two deeds described the conveyances in terms that used the north boundary of the easement for the 1898 deed, and the south boundary of the easement in the 1904 deed. *Id.* at 361. Thus, the *Cox* deeds are similar to the deeds Delaune executed in 1908 and 1916, as the property descriptions in the deeds called for borders on the railroad's right of way, and the deeds did not describe borders to the center of the railroad easement. *Id.* at 361-62. Although Campbell sold the property at issue in *Cox* several years apart to different grantees, the presumption to the centerline rule was still applied. *Id.* at 365-66.

Red Boot and Delaune's descendants argue that the presumption to the centerline rule does not apply to a canal easement. According to Delaune's descendants, as a category of easements, irrigation canal right of ways are not burdened with a public right of passage like an easement for a highway, street, or railroad. In response to Red Boot's arguments that the authorities Samson cite concern cases that do not involve canal easements, Samson cited cases from other jurisdictions holding that a boundary call on an artificial waterway such as a canal

conveys the property to the center of the canal.[5] *See Tagliaferri v. Grande*, 120 P. 730, 732 (N.M. 1911); *Goodyear v. Shanahan,* 43 Conn. 204, 210 (1875); *Bischoff v. Walker,* 107 So.3d 1165, 1169 (Fla. Dist. Ct. App. 2013); *Warren v. City of Gloversville,* 81 A.D. 291, 293 (N.Y. App. Div. 1903); *Thornhill v. Skidmore,* 32 Misc.2d 320, 326-27 (N.Y. Sup. Ct. 1961); *Scholl v. Emerich,* 36 Pa. Super. 404, 417 (Pa. Super. Ct. 1908).

Like owners of land adjoining railroad rights of way, owners of land adjoining irrigation canals enjoy statutory appurtenant rights. *See Cox*, 143 S.W.2d at 366; *Weed*, 50 S.W.2d at 1085-86; Tex. Water Code Ann. § 11.038 (West 2008). At the time of the conveyances to Bernard and Paggi in 1908 and 1917, adjoining landowners could acquire permanent rights to purchase water from the irrigation canal. *See* Act approved March 21, 1895, 24th Leg., R.S., ch. 23, § 11, 1895 Tex. Gen. Laws 27 *reprinted* in 10 H.P.N. Gammel, *The Laws of Texas* 1822-1897, at 757 (Austin, Gammel Book Co. 1898) (amended, current version at Tex. Water Code Ann. § 11.038). The permanent water rights created by the 1895 statute relevant to canals imposed an easement that runs with the land. *Id.* (current version

---

[5] While we have not located an opinion from a Texas court expressly holding that the presumption to the centerline rule applies in cases involving a canal easement, the Texas Supreme Court has stated that railroad, road, and canal easements are the types of easements that a grantor cannot reserve by merely excepting such easements in deeds that convey the tract on which the easements exists. *Lewis v. East Tex. Fin. Co.*, 146 S.W.2d 977, 978 (Tex. 1941).

at Tex. Water Code Ann. § 11.040 (West 2008)). At the time Delaune granted the canal easement, the laws authorizing irrigation canals imposed burdens on landowners and provided rights and benefits to the owner of the property burdened by the canal. *See id.*; *see also id.,* Act of March 9, 1895, 24th Leg, R.S., ch. 21, §§ 1-21, 1895 Tex. Gen. Laws 21.

We are not persuaded by Red Boot's arguments that the presumption to the centerline rule does not apply to Delaune's 1908 and 1916 deeds. We hold the trial court properly applied the rule, in conjunction with the other rules of construction, in deciding whether Delaune intended the deeds to convey the deed's grantees the property to the center of the canal easement.

## The Appurtenance Doctrine

Red Boot and Delaune's descendants argue that no appurtenant rights in Delaune's grant to the Beaumont Irrigating Company justify construing Delaune's deeds as having conveyed the property beneath the canal to the purchasers of the adjacent tracts. Also, they argue that the benefits described in the easement Delaune granted were in the nature of easements in gross, and that as such, the benefits were personal to Delaune.

We disagree that the canal easement did not create any appurtenant rights that were of benefit to the individuals that purchased the Paggi and Bernard Tracts.

24

The summary judgment evidence demonstrates that the rights Delaune reserved under the canal easement attached to the Bernard and Paggi Tracts. For instance, the grant of the canal easement that the Beaumont Irrigating Company gave Delaune allowed him to require the irrigating company to construct and maintain a bridge over the canal, and the right to construct and maintain drain flumes and culverts under the canal so that he could drain and irrigate his land. Also, the grant provided that Delaune, his heirs, and his assigns could, among other things, dam water passing through and under the canal against the canal's bank, and that he could fence across the canal. In our opinion, Delaune's recorded easement to the Beaumont Irrigating Company expresses a variety of obligations that run with the land. *See generally Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987) (describing when a covenant runs with the land).

With respect to the various obligations that Delaune described in the easement he gave to the Beaumont Irrigating Company, Delaune's descendants argue that none of these rights are necessary and essential to the purchasers of either the Bernard or the Paggi Tracts. Additionally, Red Boot argues that Samson failed to tender any evidence to show that the subsequent owners had ever exercised any of the appurtenant rights that relate to the canal easement.

25

In construing a deed, we presume that a conveyance reflects an intention to carry with it the appurtenant rights that belong to the property at the time of the conveyance. *See Weed*, 50 S.W.2d at 1084. Delaune's easement to the Beaumont Irrigating Company created appurtenant rights with respect to the canal not only for his benefit, but also for the benefit of his heirs and assigns. The easement runs with the land and relates to ensuring that the land adjoining the canal remained irrigable. We conclude that Bernard and Paggi, and then the Broussards and the Harders, acquired appurtenant rights relating to the canal by purchasing the two tracts at issue. *See Weed*, 50 S.W.2d at 1085.

Reversion of the Canal Tract

Red Boot argues that the summary judgment evidence shows that the Beaumont Irrigating Company constructed the canal outside the boundaries of the easement that Delaune gave it in 1898 to build the canal. Red Boot argues that because the canal "changed upon said land," the canal easement reverted to Delaune before Delaune executed to Bernard and Paggi deeds.

Assuming the discrepancy in the call on the two instruments raises a fact issue regarding whether the canal is actually located within the metes and bounds described in the granting instrument, it is undisputed that the canal was built and that it still exists and is in use. If the canal is not located within the called

26

boundaries of the grant of the easement, Bernard acquired the property where the canal is located subject to Beaumont Irrigating Company's easement by implication and the land described in the grant was conveyed with the fee in the Paggi deed. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207-08 (Tex. 1962) (describing elements of implied easement appurtenant). The transactions that relate to the Bernard and Paggi deeds occurred after the canal was built on Delaune's property, and both deeds refer to the canal right of way as the common border. *See Cox*, 143 S.W.2d at 365-66. We conclude that the reversion provision in the easement is not relevant to the question of whether Delaune's descendants own the minerals beneath the Canal Tract or to the question of whether Red Boot has a valid lease.

## Holding as to Deeds

Based on the four corners of the Bernard and Paggi deeds, we find no error regarding the trial court's conclusion that the deeds conveyed the fee to the property that lies below the canal to the respective grantees of those deeds. We further find no error in the trial court's conclusion that, as a matter of law, Delaune

27

intended to convey the respective properties described by the deeds to the centerline of the canal easement.[6]

Delaune's Children and their Interest in the Tracts

Delaune's descendants contend the trial court erred in granting summary judgment because Samson did not establish that Delaune owned the entirety of the tracts conveyed by the Bernard and Paggi deeds. The record shows that Delaune bought the tracts while he was married to Azima Delaune. However, the Bernard and Paggi deeds post-date Azima's death, and neither deed expressly states that the grant includes the one-half interest in the community estate that August's and Azima's children, Bertha and Irving, inherited from Azima upon her death.

Delaune's descendants contend that a fact issue exists regarding Delaune's ownership interest that precludes summary judgment. According to Delaune's descendants, a fact issue exists even though Delaune, as the survivor of the marriage, was authorized to sell their community property to pay community debts.

---

[6] In its motion for summary judgment, Samson presented an additional ground for summary judgment based on the doctrine of presumed lost deed. On appeal, Red Boot and Delaune's descendants argue the judgment cannot be sustained on a presumed lost deed theory, and Delaune's descendants contend that their leases to Red Boot raised fact issues regarding their claim of ownership. We do not reach the issues the parties advance under their presumed lost deed arguments because the summary judgment may be affirmed on other grounds. *See* Tex. R. App. P. 47.1 (allowing the opinion to address only the issues that are necessary to the Court's final disposition of the appeal).

They further contend that a fact issue exists even though Delaune's children later ratified the deeds their father made to convey all property in Jefferson County after Azima died.[7] In particular, Delaune's descendants argue that a report that Delaune made to the probate court in 1900 shows that the community debts from his marriage to Azima were paid before the date he sold the Bernard and Paggi Tracts, and the document ratifying Delaune's decisions to sell property in Jefferson County, which bears the signatures of Delaune's children, merely references "some actual or apparent interest in the lands[.]" Additionally, they note that the document ratifying the deeds Delaune executed quitclaims only their interest "in and to the lands described in said deeds[.]"

It is undisputed that Delaune qualified as a community administrator before he executed the deeds to the Bernard and Paggi Tracts. A qualified community administrator may dispose of the community property, including the interest that passes to any children under the laws of descent, although no community debts existed on the date of the conveyance. *Brunson v. Yount-Lee Oil Co.*, 56 S.W.2d 1073, 1074-75 (Tex. 1933). Any claims that Delaune's heirs may have for the

_____

[7] The probate of Azima Delaune's estate and the ratification of Delaune's conveyances are listed in Samson's abstract of title, but are not included in the abstracts of Red Boot or of Delaune's descendants. In the trial court, the parties argued at length concerning the effect of the documents; however, copies of the documents are not included in the summary judgment evidence.

29

manner in which Delaune administered Azima's estate are claims they would have against Delaune as the community administrator on his bond; they are not claims that Delaune's heirs can bring against the grantees of the property that purchased property from Delaune in the course of his administration of his wife's estate. *See id.*

Given the summary judgment evidence showing that Delaune's children ratified the deeds to the Bernard and Paggi Tracts, and the summary judgment evidence showing that Delaune acted as the administrator of his wife's estate, we conclude the trial court properly rejected Delaune's descendants' claims that the deeds at issue failed to convey Azima's interest in the property.

Motion for Continuance

Delaune's descendants contend the trial court erred in denying their request for a continuance of the summary judgment proceedings. The record shows that Delaune's descendants intervened in the case on June 27, 2013. Samson filed its motion for summary judgment on August 22, 2013. In their first motion for continuance, which was filed on September 24, 2013, Delaune's descendants requested a continuance of forty-five days to conduct additional discovery. The additional discovery they desired to conduct concerned a Division Order title opinion that Samson asserted was privileged. Delaune's descendants argued that

30

Samson had waived any privilege because it had produced the opinion to the Broussards. The trial court held a summary judgment hearing on October 1, 2013, and indicated that it would consider the request to continue the case but it never ruled on the motion.

On January 7, 2014, Delaune's descendants filed another motion for continuance. On the same day, Delaune's descendants filed an additional summary judgment response with additional evidence. In the second summary judgment hearing, which the trial court conducted on January 30, 2014, Delaune's descendants argued that compelling Samson to produce additional documents would reveal that Samson and SM Energy were aware that fact issues existed on the question of whether they had valid title to the minerals they were producing from the Canal Tract. During the hearing, the trial court indicated that it would examine the documents Samson claimed were privileged in camera.

On February 5, 2014, the trial court granted Samson's, SM Energy's, the Broussard's and the Harder's motions for summary judgment. Subsequently, Red Boot and Delaune's descendants filed post-judgment motions asking the trial court to reconsider its rulings. On April 2, 2014, the trial court conducted a hearing on the post-judgment motions, and granted Red Boot's request to allow it to file supplemental evidence. Two days later, the trial court denied the post-judgment

motions.[8] Red Boot and Delaune's descendants have not raised any issues in the appeal complaining about the trial court's discovery rulings on the documents that the trial court reviewed during the in-camera inspection.

"A request for a continuance is within the trial court's discretion, and the trial court's ruling will not be disturbed on appeal unless an abuse of discretion is shown." *Karen Corp. v. Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 124 (Tex. App.—Fort Worth 2003, pet. denied). Several nonexclusive factors are considered when reviewing the trial court's ruling, which include "the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004).

Delaune's descendants contend the trial court abused its discretion because it ruled on the motion for summary judgment when there was an outstanding motion to compel production of documents relevant to issues of title. But, Delaune's descendants have not challenged the trial court's ruling on the discovery dispute,

---

[8] The order denying the motions specifically excepts the post-judgment motion that Red Boot and Delaune's descendants filed on February 5, 2014. In the February 5 motion, Red Boot and Delaune's descendants asked the trial court to dismiss the Broussards from the proceedings. The trial court subsequently signed an order dismissing the Broussards as defendants from the proceedings.

and they have not shown that a further continuance would have allowed them to secure documents relevant to the matters in dispute. We conclude no abuse of discretion has been shown.

## Conclusion

Based on the summary judgment evidence, we conclude that Delaune, through his 1908 and 1916 deeds to Bernard and Paggi, intended to convey the fees in the two tracts to the centerline of the canal separating the tracts. We further conclude the trial court did not abuse its discretion by refusing to grant the Delaune descendants' motion for continuance. Having concluded that the summary judgment was appropriate, we affirm the trial court's take-nothing judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 22, 2015
Opinion Delivered October 1, 2015

Before McKeithen, C.J., Kreger and Horton, JJ.

33